10-889-cv
Louisiana Stadium & Exposition District, et al. v. Merrill Lynch, Pierce, Fenner & Smith Inc., et al.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2010

(Argued: November 4, 2010                                        Decided: November 22, 2010 )

Docket No. 10-889-cv

LOUISIANA STADIUM & EXPOSITION DISTRICT and STATE OF LOUISIANA,

     *Plaintiffs-Appellants*,

     v.

MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED and MERRILL LYNCH & CO.,
INC.,

     *Defendants-Appellees*.

Before: CABRANES and CHIN, *Circuit Judges*, and UNDERHILL, *District Judge*.[*]

     Appeal from a February 8, 2010 order of the United States District Court for the Southern

District of New York (Loretta A. Preska, *Chief Judge*) denying plaintiffs' motion to compel arbitration.

     Affirmed.

<div style="margin-left:40%">

JAMES R. SWANSON (Lance C. McCardle, Alysson L. Mills, *on the brief*),
Fishman Haygood Phelps Walmsley Willis & Swanson, L.L.P., New
Orleans, LA, *for Plaintiffs-Appellants*.

SCOTT D. MUSOFF (Jay B. Kasner, *on the brief*), Skadden, Arps, Slate,
Meagher & Flom LLP, New York, NY, *for Defendants-Appellees*.

</div>

[*] The Honorable Stefan R. Underhill of the United States District Court for the District of Connecticut, sitting by designation.

JOSÉ A. CABRANES, *Circuit Judge*:

Plaintiffs-appellants Louisiana Stadium & Exposition District and the State of Louisiana (collectively, "LSED") appeal from an order of the United States District Court for the Southern District of New York (Loretta A. Preska, *Chief Judge*), denying their motion to compel arbitration in their dispute with defendants-appellees Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPFS") and Merrill Lynch & Co., Inc. (jointly, "defendants"). Assuming for the argument that LSED possessed a right to arbitration, the District Court held that LSED had waived that right by expressing its intent to resolve the dispute through litigation. *In re Merrill Lynch Auction Rate Secs. Litig.*, 09 MD 2030 (LAP), 2010 U.S. Dist. LEXIS 12764 (S.D.N.Y. Feb. 8, 2010). We affirm.

**BACKGROUND**

LSED owns the Superdome in New Orleans, Louisiana. In early 2005 LSED solicited the services of an underwriter and broker-dealer to help restructure its existing bond debt. MLPFS submitted a proposal in response under cover of a letter from Stephen Claiborn. In the letter, Claiborn was identified as a Managing Director of Merrill Lynch Global Markets & Investment Banking. As LSED would later verify, Claiborn was technically employed by MLPFS, a wholly-owned subsidiary of Merrill Lynch.

LSED accepted Claiborn's proposal. Shortly thereafter, in August 2005, the Superdome sustained significant damage as a result of Hurricane Katrina, and LSED turned to MLPFS for advice on how best to finance the necessary repairs. Acting on the advice of MLPFS, LSED issued $240 million of municipal bonds structured as auction rate securities ("ARS") in 2006. LSED claims that MLPFS knowingly misled it about the true demand for these securities, leading to the failure of LSED's

2

auctions in 2008.

LSED initiated the underlying action on January 22, 2009, when it filed suit in the United States District Court for the Eastern District of Louisiana against Financial Guaranty Insurance Company, its bond insurer.[2] Days later, LSED amended its complaint to add claims against three separate Merrill Lynch entities: Merrill Lynch & Co., Inc.; Merrill Lynch Capital Services, Inc.; and MLPFS. LSED named the three different Merrill Lynch entities as defendants because it could not determine which of them employed the individuals who provided LSED with allegedly unsound financial advice.

On January 29, 2009, a day after amending its complaint to include the three Merrill Lynch entities, LSED filed an essentially identical action in Louisiana state court. Defendants removed the state-court action to federal court and filed a motion before the Judicial Panel on Multidistrict Litigation ("MDL Panel") to centralize in one district LSED's case and three other ARS cases then pending against defendants in other districts. Despite opposition from LSED, the MDL Panel granted defendants' motion to have these cases transferred to the Southern District of New York. *In re Merrill Lynch & Co., Auction Rate Sec. (ARS) Mktg. Litig.*, 626 F. Supp. 2d 1331, 1332 (J.P.M.L. 2009). Defendants responded by sending LSED—pursuant to a stipulation and order by the District Court—a long letter detailing the perceived deficiencies of its complaint. Though technically not a motion to dismiss, defendants' letter asserted that LSED could not obtain relief based on the factual allegations made in its complaint.

On December 9, 2009—one day before LSED's third amended complaint was due to be filed—LSED sent a letter to defendants suggesting that the parties jointly submit a motion to arbitrate their dispute. The following day LSED filed its third amended complaint (which was, at least in part, an effort to rectify deficiencies previously identified by defendants). By this time, LSED had retained a

---

[2] Financial Guaranty Insurance Company is not a party to this appeal.

consultant who was able to verify that the individuals responsible for the allegedly unsound financial advice all worked for MLPFS. Accordingly, LSED's third amended complaint alleged direct claims against MLPFS only, and control-person claims against Merrill Lynch & Co., Inc., MLPFS's parent. Defendants did not respond to LSED's invitation to arbitrate their differences, but it did file an answer to the third amended complaint on December 11, 2009. On December 21 LSED filed a motion to compel arbitration against MLPFS on the grounds that MLPFS is a member of the Financial Industry Regulatory Authority ("FINRA"), and is thus obliged to arbitrate customer disputes in a FINRA arbitration. The District Court denied the motion, and this appeal followed.

## DISCUSSION

We have jurisdiction to hear this interlocutory appeal of an order denying a motion to compel arbitration pursuant to 9 U.S.C. § 16(a).[3] "We review *de novo* a district court's decision regarding waiver of a party's right to arbitrate, but we review the factual findings on which the district court relied for clear error."[4] *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104 (2d Cir. 2002).

In determining whether a party has waived its right to arbitration by expressing its intent to litigate the dispute in question, we consider the following three factors: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 229 (2d Cir. 2001) (citing *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995)). There is no rigid formula or bright-line rule for identifying when a party has waived its right to arbitration; rather, the above factors must be applied to

---

[3] Pursuant to 9 U.S.C. § 16(a)(1)(C), "An appeal may be taken from an order denying an application . . . to compel arbitration." 9 U.S.C. § 16(a)(1)(C).

[4] Because we conclude that LSED has waived any right it had to arbitrate this dispute with defendants, we need not decide whether LSED's claims are in fact arbitrable.

4

the specific context of each particular case. That said, "[t]he key to a waiver analysis is prejudice. 'Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated.'" *Thyssen*, 310 F.3d at 105 (quoting *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985)). We have recognized two types of prejudice: substantive prejudice and prejudice due to excessive cost and time delay. *Id.*; *see also PPG Indus. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997) ("Incurring legal expenses inherent in litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver." (citing *Leadertex*, 67 F.3d at 26)). Both forms of prejudice are present in this case.

Eleven months elapsed between LSED's initial filings in state and federal court and its motion to compel arbitration with MLPFS. No discovery took place during that time, but the litigation was hardly dormant. In those eleven months, defendants (1) filed a motion to remove the state court action to federal court in Louisiana, (2) filed a motion to transfer the case to the Southern District of New York, (3) moved to stay the proceedings in the Eastern District of Louisiana pending the MDL Panel's decision, (4) submitted to LSED a nineteen-page, single-spaced letter identifying the deficiencies in LSED's second amended complaint, (5) filed an answer to LSED's third amended complaint, and (6) began work on a motion for judgment on the pleadings. The District Court found that defendants "expended significant resources" in undertaking these endeavors. *In re Merrill Lynch Auction Rate Secs. Litig.*, 2010 U.S. Dist. LEXIS 12764, at *13. Furthermore, LSED only sought to pursue arbitration after defendants submitted their nineteen-page letter detailing perceived deficiencies in LSED's second amended complaint, and after LSED unsuccessfully attempted to defeat defendants' motion to transfer the case from the Eastern District of Louisiana to the Southern District of New York. Those facts demonstrate that the parties spent a significant amount of time and expense litigating before LSED sought arbitration against MLPFS. They also show that MLPFS would be procedurally prejudiced if it were compelled to arbitrate nearly a year into the litigation with LSED, and after winning several key

5

procedural victories, including the consolidation of LSED's case with other ARS actions in a single MDL proceeding.

MLPFS would also be substantively prejudiced if it were compelled to arbitrate. If LSED succeeds in compelling arbitration, it would be able to preempt consideration of the defendants' inevitable motion for judgment on the pleadings which was plainly foreshadowed by the detailed deficiency letter sent the defendants had sent to LSED; indeed, defendants filed such a motion with the District Court on the same day that LSED's motion to compel arbitration was denied. By pursuing litigation for as long as it did, LSED was able to obtain the benefit of the analysis contained in the deficiency letter, while in an arbitration proceeding MLPFS is likely to have much greater difficulty successfully pursuing a motion to dismiss because such motions are discouraged under the relevant FINRA rules. *See* FINRA R. 12504(a)(1) ("Motions to dismiss a claim prior to the conclusion of a party's case in chief are discouraged in arbitration.").

Moreover, the District Court determined that MLPFS would be further prejudiced by the disruption of the MDL Panel's transfer and centralization of the cases. We agree. A court's assessment of the second type of prejudice may include "other surrounding circumstances" beyond the burdens and expenses that would result from a grant of arbitration. *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991). The MDL Panel ordered centralization of this action to "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Merrill Lynch & Co.*, 626 F. Supp. 2d at 1332. While concern for judicial economy alone is not a basis for finding waiver of a right to arbitration, *see Kramer*, 943 F.2d at 179, the District Court's expanded analysis accounting for the underlying MDL litigation—in addition to the unnecessary expense and delay defendants incurred in this litigation thus far—justified a finding of waiver.

Lastly, it is significant that LSED is a plaintiff, rather than a defendant, moving for arbitration. Although we recognize that a plaintiff's initiation of a lawsuit does not, by itself, result in a waiver of

arbitration, *see Louis Dreyfus*, 252 F.3d at 229, we also note that by filing its lawsuit and litigating it at length, LSED "acted inconsistently with its contractual right to arbitration." *PPG Indus.*, 128 F.3d at 109. LSED suggests that its delay in seeking arbitration should be excused because it did not learn for certain that all of its relevant financial advisors were employed by MLPFS until November 2009—just one month before LSED formally moved to compel arbitration. We are unsympathetic to this argument. LSED named MLPFS as a defendant in January 2009, so it clearly had reason to believe at that point (if not sooner) that it had a dispute with that particular entity. If LSED had sufficient information to hale MLPFS into federal court, it should also have been aware that it could arbitrate its claims against MLPFS. LSED asserts that its efforts in uncovering MLPFS's involvement in this dispute were unduly hampered by opposing counsel's refusal to clarify the relevant corporate structure of Merrill Lynch. But LSED's first request for such information was not made until August 26, 2009, *seven months* after this litigation commenced. Moreover, LSED concedes that it was able to confirm MLPFS's role in the underlying dispute once it retained an outside consultant to research the issue, but does not explain why it was unable to conduct this apparently vital research prior to November 2009.

## CONCLUSION

It is true that "waiver of arbitration is not to be lightly inferred," *PPG Indus.*, 128 F.3d at 107 (quotation marks omitted). But a litigant is not entitled to use arbitration as a means of aborting a suit that did not proceed as planned in the District Court. *See Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002) ("[W]e do not want parties to forum shop, taking a case to the courts and then, if things go poorly there, abandoning their suit in favor of arbitration."). Because of the delay and expense incurred between LSED's commencement of its lawsuit and its motion to compel arbitration, and because of the procedural and substantive prejudice MLPFS would face if it were forced to arbitrate LSED's claims, we hold that LSED waived its arbitration rights.

7

Accordingly, the order of the District Court denying LSED's motion to compel arbitration is **AFFIRMED** and the case is **REMANDED** to the District Court for further proceedings consistent with this opinion.