This opinion is uncorrected and subject to revision before
publication in the New York Reports.
--------------------------------------------------------------

No. 200
Rita Cusimano, &c., et al.,
            Respondents,
        v.
Andrew V. Schnurr, CPA, et al.,
            Appellants.
Bernard V. Strianese, et al.,
        Intervenors-Appellants.

            Alan Heller, for appellants Schnurr, et al. and
intervenor-appellant Bernard V. Strianese.
            Patrick McCormick, for intervenor-appellant Bernadette
Strianese.
            David S. Pegno, for respondents.

LIPPMAN, Chief Judge:

            The issues presented by this appeal are whether the

Federal Arbitration Act (FAA) is applicable to disputes arising

under the agreements at issue and, if so, whether plaintiffs Rita

and Dominic Cusimano waived their right to arbitrate by pursuit

of this litigation.  We hold that the FAA does apply, but that

- 1 -

plaintiffs waived their right to arbitrate.

This appeal concerns three commercial agreements entered into among family members regarding family-owned entities. Each agreement was executed by New York residents[1] and each contains a provision stating that disputes will be settled by arbitration pursuant to the rules of the American Arbitration Association (AAA).

The first agreement at issue is the partnership agreement relating to the Strianese Family Limited Partnership (FLIP), which was formed by Rita's father, intervenor Bernard Strianese, and mother, nonparty Carmella Strianese, in 1998. The FLIP maintains its office in New York. According to the partnership agreement, the FLIP was formed for the stated purposes of owning, acquiring and developing real property, as well as making other types of investments. The FLIP had owned commercial property in Deer Park, New York, but now owns property in Florida that it leases to a CVS drug store.

In 2010, Rita commenced a prior action in Nassau County Supreme Court seeking judicial dissolution of the FLIP. Bernard and Carmella intervened and successfully moved to compel arbitration of the proceeding. The court subsequently granted intervenors' motion to confirm the arbitration award that found them to be majority owners, and the Appellate Division affirmed

---

[1] Rita Cusimano represents that she has since moved to the State of Florida.

(Matter of Cusimano v Strianese Family Ltd. Partnership, 97 AD3d 744 [2d Dept 2012]).

The second agreement at issue is the operating agreement of Berita Realty, LLC, which was formed by Rita and her sister, intervenor Bernadette Strianese, in 2001. Its principal place of business is in Port Washington, New York. Berita owns a 19% interest in an entity called Greenbriar Associates, which, in turn, owns a Marriott hotel in Plainview, New York.

In 2010, Rita commenced a separate action in Nassau County Supreme Court seeking judicial dissolution of Berita and an accounting. Bernadette moved to compel arbitration and the court stayed the proceeding, directing arbitration of all issues. Upon Rita's appeal, the Appellate Division affirmed (Matter of Cusimano v Berita Realty, LLC, 103 AD3d 720 [2d Dept 2013]).

Also at issue is an agreement by which Rita sold her interest in one of the "Seaview Corporations," -- 60 Seaview -- to Bernadette. The Seaview Corporations were formed by Bernard, Rita and Bernadette, and own two commercial buildings in Port Washington, New York.

The instant action was commenced in August 2011 in New York County Supreme Court, alleging fraud and malpractice against the family's accountants (defendants Schnurr and Norman) for work they had performed between 1991 and 2009, including allegations that they had aided and abetted fraud and other misconduct on the part of Bernard and Bernadette, who were not named as defendants.

Before defendants responded to the complaint, plaintiffs moved to disqualify defendants' counsel. Plaintiffs also sought discovery by serving three nonparty subpoenas, which defendants moved to quash. During oral argument on the motion to disqualify, defense counsel maintained that the matter "belongs in arbitration."

Defendants then moved to dismiss the complaint on several grounds, including that the claims were time-barred. Supreme Court dismissed the complaint, but gave plaintiffs 20 days to replead certain causes of action with specificity. The court, however, made clear that it viewed many of the claims as falling outside the statute of limitations. Moreover, while discussing why plaintiffs were seeking corporate documents from the defendant accountants, the court told plaintiffs' counsel:

> "it would be logical if you need documents to go to the corporation that has the documents.
>
> [PLAINTIFFS' COUNSEL]: We discussed that, that was sent to arbitration.
>
> [DEFENSE COUNSEL]: Exactly, and that's where it belongs.
>
> THE COURT: So go to arbitration and you get the documents
>
> [PLAINTIFFS' COUNSEL]: We don't believe --
>
> THE COURT: You don't want to go to arbitration.
>
> [PLAINTIFFS' COUNSEL]: Correct, your Honor.
>
> [DEFENSE COUNSEL]: So what? They have been sent there so don't try to get it from you.
>
> [PLAINTIFFS' COUNSEL]: Your Honor, we have appellate rights. There certainly is no

reason why we should go to arbitration simply
because [defense counsel] wants us to and --

THE COURT:  I'm getting a nasty feeling here
that this is frivolous litigation."

On the 20th day, plaintiffs filed a demand for arbitration and a
statement of claim with AAA.  The allegations were nearly
identical, except that Bernard and Bernadette were included as
respondents.

Plaintiffs then moved to dismiss the action they had
commenced in Supreme Court or, in the alternative, for a stay
pending arbitration.  Defendant accountants cross-moved to
dismiss the action with prejudice or, in the alternative, to
permanently stay the claims asserted in the arbitration demand as
time-barred.  Bernard and Bernadette moved to intervene and for a
permanent stay of the arbitration claims, as barred by the
statute of limitations.

Concluding that the FAA was inapplicable because the
totality of the economic activity at issue did not have an effect
on interstate commerce, Supreme Court determined that it, rather
than the arbitrator, was the appropriate forum to decide the
statute of limitations issues.  The court further opined that
this was "a flagrant example of forum shopping" and that
plaintiffs had waived the right to arbitration by their "resort
to and aggressive participation in this litigation."  Supreme
Court therefore granted the motion to intervene, granted the
motions and cross motion to stay the arbitration to the extent of

staying certain claims on statute of limitations grounds and granted the plaintiffs' motion to the extent of directing that the parties arbitrate the remaining non-time-barred claims.

The Appellate Division, among other things, reversed the judgment insofar as appealed from, and denied the motions and cross motion to stay arbitration (120 AD3d 142 [1st Dept 2014]). The Court held that the FAA applied to the agreements because each "concern[ed] transactions that affect[ed] commerce" (120 AD3d at 148). In particular, the Court observed that the entities were involved in commercial real estate, holding interests in properties that were rented to an international hotel chain and a national drug store chain. The Court rejected the argument that plaintiffs had waived the right to arbitration, holding that they had not engaged in "protracted litigation" and there was no resulting prejudice to the other parties. This Court granted defendants and intervenors leave to appeal and we now reverse.

The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract" (9 USC § 2). The United States Supreme Court has interpreted the reach of the FAA extremely broadly, characterizing the Act's basic purpose as

"overcom[ing] courts' refusals to enforce agreements to arbitrate" (Allied-Bruce Terminix Cos. v Dobson, 513 US 265, 270 [1995]). In Allied-Bruce, the Supreme Court held that the term "involving commerce" was meant to be the functional equivalent of "affecting commerce," which typically signals Congress's intent to invoke the full extent of its powers under the Commerce Clause (see 513 US at 273-274).

In particular, the Court addressed the scope of the statutory language, "evidencing a transaction involving commerce." The Court observed that there were conflicting interpretations of the phrase -- whether it meant that the parties had contemplated substantial interstate activity at the time they had entered the agreement, or whether the transaction at issue must have turned out, in fact, to have involved interstate commerce (see 513 US at 277). The Court concluded that the "commerce in fact" interpretation was more in keeping with the statute, pointing out that the "contemplation of the parties" test appeared contrary to congressional intent, as it would invite litigation about what the parties had been thinking when they executed the agreement (see 513 US at 278). "[W]e accept the 'commerce in fact' interpretation, reading the Act's language as insisting that the 'transaction' in fact 'involve' interstate commerce, even if the parties did not contemplate an interstate commerce connection" (513 US at 281).

More recently, the United States Supreme Court

indicated that it was "perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce' -- that is, 'within the flow of interstate commerce'" (Citizens Bank v Alafabco, Inc., 539 US 52, 56 [2003]).  The Court clarified that it is not necessary for the individual transaction to have a substantial effect on interstate commerce, so long as the type of activity at issue has the requisite substantial effect (see 539 US at 56).  "Congress's Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'  Only that general practice need bear on interstate commerce in a substantial way" (539 US at 56-57 [citations omitted]).

Defendants and intervenors maintain that the FAA does not apply to the agreements at issue here because the agreements themselves do not evidence transactions that affect commerce. They assert that, to the contrary, these agreements are intrafamily transactions executed by New York residents.  In addition, they argue that the entities are "passive" and require "little or no active management."  As a result, they contend, there is no impact on interstate commerce.

Here, the Berita and FLIP agreements concern ownership of and investment in commercial properties.  Indeed, Berita leases its property to an international hotel chain and the FLIP

owns property out-of-state that it leases to a national drug store chain.  This activity, in the aggregate, plainly bears on interstate commerce.  While the question is closer as to 60 Seaview Corp., that agreement likewise concerns commercial real estate and has the requisite substantial effect on interstate commerce.[2]  Although certain courts have determined that single residential real estate transactions are intrastate in nature (see e.g. Saneii v Robards, 289 F Supp 2d 855, 858-859 [WD Ky 2003]), matters concerning commercial real estate have been treated as implicating interstate commerce (see e.g. Hall Street Associates, L.L.C. v Mattel, Inc., 552 US 576, 590 [2008] [observing that there was no dispute that the commercial lease involved interstate commerce]; A-1 A-lectrician, Inc. v Commonwealth Reit., 943 F Supp 2d 1073, 1078 [D Haw 2013]).  Under these circumstances, we conclude that the FAA is applicable to these agreements.

Although this interpretation is undeniably broad, the Supreme Court has made it abundantly clear that the FAA's reach is expansive.  The idea that the intrafamilial nature of the agreements has some bearing on whether the FAA is applicable finds no support in the caselaw.  Nor does the fact that these agreements do not themselves evidence the commercial transactions appear to be significant.  The ultimate purpose of the agreements

---

[2] Notably, according to the complaint, one of the two Seaview Corp. buildings was sold for $4.7 million.

was to authorize participation in the business of commercial real estate and that is, in fact, what the entities did. In determining whether the FAA applies, the emphasis is meant to be on whether the particular economic activity at issue affects interstate commerce -- and, here, it does.

Nonetheless, plaintiffs have waived their right to arbitrate this dispute. "'[L]ike contract rights generally, a right to arbitration may be modified, waived or abandoned.' Accordingly, a litigant may not compel arbitration when its use of the courts is 'clearly inconsistent with [its] later claim that the parties were obligated to settle their differences by arbitration'" (Stark v Molod Spitz DiSantis & Stark, P.C., 9 NY3d 59, 66 [2007] [citations omitted]). While it is true that "[n]ot every foray into the courthouse effects a waiver of the right to arbitrate," we are satisfied that the totality of plaintiffs' conduct here establishes waiver (Sherrill v Grayco Bldrs., 64 NY2d 261, 273 [1985]).

Plaintiffs emphasize the federal policy preference in favor of arbitration and observe that "any doubts concerning whether there has been a waiver are resolved in favor of arbitration" (Leadertex, Inc. v Morganton Dyeing & Finishing Corp., 67 F3d 20, 25 [2d Cir 1995]). Generally, when addressing waiver, courts should consider the amount of litigation that has occurred, the length of time between the start of the litigation and the arbitration request, and whether prejudice has been

established (see Leadertex, 67 F3d at 25).  The majority of
federal courts have taken the position that waiver cannot be
established in the absence of prejudice (compare Cabinetree of
Wisconsin, Inc. v Kraftmaid Cabinetry, Inc., 50 F3d 388, 390 [7th
Cir 1995] [holding that an election to proceed in court "is a
presumptive waiver of the right to arbitrate"]).

This said, the present case is strikingly similar to
Louisiana Stadium & Exposition Dist. v Merrill Lynch, Pierce,
Fenner & Smith, Inc. (626 F3d 156 [2d Cir 2010]).  There, the
plaintiff had initially commenced litigation but, after eleven
months and substantial motion practice, moved to compel
arbitration.  Significantly, the defendants had sent a detailed
letter identifying deficiencies in the plaintiff's complaint and
had filed a motion to dismiss on the pleadings.  The court
observed that there were "two types of prejudice: substantive
prejudice and prejudice due to excessive cost and time delay,"
and determined that both types had been established (626 F3d at
159).

As to substantive prejudice, the court pointed out that
granting the motion to arbitrate would allow the plaintiff to
avoid the motion to dismiss, the substance of which had been
related in the deficiency letter (see 626 F3d at 160).  As to the
second type of prejudice, the court noted that it could consider
"'other surrounding circumstances' beyond the burdens and
expenses that would result from a grant of arbitration,"

including judicial economy, and observed that the matter had been transferred to a particular district court so that it would be centralized with other similar cases (626 F3d at 160). Finally, the court attached significance to the fact that the plaintiff, who had commenced the litigation, was the party seeking arbitration. "Although we recognize that a plaintiff's initiation of a lawsuit does not, by itself, result in a waiver of arbitration, we also note that by filing its lawsuit and litigating it at length, [the plaintiff] 'acted inconsistently with its contractual right to arbitration'" (626 F3d at 160).

Here, both types of prejudice have likewise been established. After vigorously pursuing their litigation strategy for approximately one year, plaintiffs moved to compel arbitration. Even more telling, the desire for arbitration only arose after Supreme Court made plain its view that plaintiffs' claims were vexatious and largely time-barred. Indeed, plaintiffs had expressly represented to Supreme Court that they did not want to go to arbitration. Plaintiffs' behavior is indicative of blatant forum-shopping and, under these circumstances, prejudice has clearly been established. Therefore, plaintiffs have waived the right to arbitration and the issue of timeliness should be determined by the court.[3]

_____

[3] Despite our previous statement, in dicta, that waiver is generally one of the issues that should be decided by the arbitrator (see Matter of Diamond Waterproofing Sys., Inc. v 55 Liberty Owners Corp., 4 NY3d 247, 252 [2005]), courts have held

Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to that court for further proceedings in accordance with this opinion.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order reversed, with costs, and case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein.  Opinion by Chief Judge Lippman.  Judges Pigott, Rivera, Abdus-Salaam, Stein and Fahey concur.

Decided December 16, 2015

---

that whether a party has waived arbitration by litigation-related conduct is an issue for the courts (see In re Pharm. Benefit Managers Antitrust Litig. 700 F3d 109, 118 [3d Cir 2012]; Joca-Roca Real Estate, LLC v Brennan, 772 F3d 945, 948 [1st Cir 2014]; Grigsby & Assoc., Inc. v M Sec. Inv., 664 F3d 1350, 1354 [11th Cir 2011]; see also Radil v National Union Fire Ins. Co., 233 P3d 688, 694 [Colo 2010]; Perry Homes v Cull, 258 SW3d 580, 588 [Tex 2008]).