*Masseau v. Luck*, No. 616-6-17 Cncv (Mello, J., Aug. 9, 2018).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Chittenden Unit | Docket No. 616-6-17 Cncv |

| | |
|---|---|
| Colin Masseau and Emily MacKenzie,<br><br>     Plaintiffs<br><br>     v.<br><br>Scott and Sharon Luck; Guy Henning, and Brickkicker/GDM Home Services, Inc.,<br><br>     Defendants | |

## OPINION AND ORDER ON MOTIONS TO DISMISS

### INTRODUCTION

Plaintiffs have sued the seller and home inspector of their recently-purchased residence in Essex Junction. Per the complaint, unbeknownst to Plaintiffs, the home, built in 1972, contained asbestos in the stucco ceilings. Plaintiffs only discovered this after they had made their purchase. Here is how that happened: after buying their home, Plaintiffs were "scrapping the textured ceiling off in the kitchen" as part of a self-directed home remodel. Compl. at ¶ 17. During the first night after having begun to work, Plaintiffs discovered, through internet research, that houses built in the 1960s and 1970s "often contain asbestos." Unsure if their home had asbestos, they immediately stopped their attempt to remodel, investigated whether their house indeed had asbestos, learned that there was contamination, and hired contractors to remove the asbestos-containing materials. They also cleaned and abated the residence. *Id*. at ¶¶ 18-24.

Plaintiffs believe that the seller misrepresented their knowledge of the asbestos in their disclosure form. *Id*. at ¶ 30. They also believe that the inspector was required, by law, to disclose the possibility of asbestos in the stucco ceilings so Plaintiffs could decide whether to obtain a more detailed inspection. *Id*. at ¶ 29. They have asserted three claims against both the seller and the inspector: (1) Violation of Vermont Unfair and Deceptive Acts or Practices (UDAP) (9 V.S.A. §2453) (*id*. at ¶¶ 31-44); (2) Negligent Misrepresentation (*id*. at ¶¶ 45-50); (3) Breach of Contract or the Implied Covenant of Good Faith and Fair Dealing (*id*. at ¶¶ 51-57). The fourth count of the complaint is against the inspector only: (4) Negligent Inspection. *Id*. at ¶¶58-62.

Defendants Guy Henning and Brickkicker/GDM Home Services, Inc. ("The Inspection Defendants") have moved to dismiss under Rule 12(b)(6), advancing three theories,[1] including an assertion that the case should be submitted to arbitration as contracted.

## ARBITRATION

The contract between the Inspector Defendants and the Plaintiffs contains a mandatory arbitration clause.[2] Plaintiffs acknowledge that they contracted for arbitration, but have raised four arguments for why the Court should not enforce this agreement: (1) contrary to state law, the clause does not clearly define mandatory arbitration by specifying that the parties cannot bring a lawsuit in court; (2) a similar version of this contract was previously held to be unenforceable by a majority of the Vermont Supreme Court; (3) by moving to dismiss on the merits while simultaneously requesting that the arbitration agreement be enforced, Defendants have waived arbitration; (4) the agreed-to arbitrator has a conflict of interest or is non-existent. The Court addresses each of these arguments.

## I. The Arbitration Clause is Governed by Federal Law, in Which There is No Separate Acknowledgment Requirement.

### A. Federal Law Governs Arbitration Contracts Involving Interstate Commerce.

The Federal Arbitration Act (FAA) "rests on Congress' authority under the Commerce Clause." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). It applies "not simply a procedural framework" in federal court; rather, "it also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration." *Id*. (citing *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984)).[3] But, for federal arbitration law to apply in state court there is one

---

[1] The inspection defendants explain that the proper entity, with whom Plaintiffs contracted, is GDM Home Services, LLC ("GDM"). Brickkicker is owned by GDM. And GDM is owned by Guy Henning.

[2] The front of the agreements says, at the bottom, in all capital letters, "CONTRACT IS SUBJECT TO BINDING ARBITRATION." Pltf's Ex. 4. The back of the contract contains the actual clause, which states, "6. Any dispute, controversy, interpretation or claim for, but not limited to, breach of contract, any form of negligence, fraud or misrepresentation or any other theory of liability arising out of, from or related to this contract, the inspection or inspection report shall be submitted to final and binding arbitration under Rules and Procedures of the Expedited Arbitration of Home Inspection Disputes of Construction Arbitration Services, Inc. The decision of the arbitrator appointed thereunder shall be binding and judgment on the Award may be entered in any court of competent jurisdiction. If no arbitration proceeding is initiated by either party within one year of the date of the inspection report, the failure to initiate the arbitration proceeding will be considered conclusive evidence that the parties are satisfied that each has properly performed their obligations under this agreement and any further action is deemed waived and forever barred." *Id*. The back of the contract also states, in all capital letters "THIS CONTRACT IS SUBJECT TO BINDING ARBITRATION." *Id*.

[3] *Southland*, which held that federal law favoring arbitration preempts any contrary state law, was arrived at despite significant doctrinal concerns from a diverse set of justices:

- O'Connor, J.: *Southland*, 465 U.S. at 22-36 (O'Connor, J. dissenting) (explaining that the plain language of Sections 3 and 4 of the FAA support the interpretation that the FAA only applies in federal court, not state court proceedings); *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 282 (1995) (concurring) (joining the majority opinion applying *Southland* on stare decisis grounds, while noting, "I continue to believe that Congress never intended the Federal Arbitration Act to apply in state courts, and that this Court has strayed far afield in giving the Act so broad a compass." (citing her dissents in *Perry v. Thomas*, 482 U.S. 483 (1987) and *York International v. Alabama Oxygen Co.*, 465 U.S. 1016 (1984)).

precondition of consequence here: the case must involve interstate commerce. See 9 U.S.C. §§ 1-2; *Southland*, 465 U.S. 1. This requirement is co-extensive with Congress' Commerce power. *Allied-Bruce Terminix Companies, Inc., v. Dobson*, 513 U.S. 265 (1995). So, the Court must determine whether the contract here can be regulated under Congress' Commerce clause power.

### B.    The Arbitration Clause "Involves Interstate Commerce."

The Commerce clause grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. Art. I § 8 cl. 3. This includes "commerce among the States, [and does not] stop at the external boundary line of each State, but [continues] into the interior." *Gibbons v. Ogden*, 9 Wheat. 1, 189-190; 194 (1824). Interstate commerce, however, historically was said not to include "commerce, which is completely internal, which is carried on between man and man[4] in a State, or between different parts of the same State, and which does not extend to or affect other States." *Id*. As economies have become more interconnected, however, this limitation has been stretched thin, nearly to a breaking point. See, e.g., *Wickard v. Filburn*, 317 U.S. 111, 121 (1942) (Congress can regulate home-grown wheat, intended entirely for personal use, because although one farmer's

---

- Scalia, J.: *Allied Bruce*, 513 U.S. at 284 (dissenting) (noting that though he joined two majority opinions in prior cases applying the FAA to state court proceedings, neither involved a direct challenge seeking to overrule *Southland*. And, explaining further that *Southland* "clearly misconstrued" the FAA. Last, announcing that he will not dissent from future judgments based on *Southland* but will join a majority opinion overturning it if there are four more justices willing to do so).

- Thomas, J.: *Id*. at 286-288 (dissenting) (explaining that at the time of the FAA's passage, arbitration was understood to be a procedural rule, which Congress would not have regulated in state courts), 292-293 (citing the legal standard for field preemption, which requires "absolute certainty" that Congress intended to displace state law, and explaining that, quite to the contrary, Thomas is "sure" that Congress did not intend to "sweep aside" wide-spread state arbitration laws enacted at the time the FAA was passed.); 294-295 (arguing that even if Section 2 of the FAA did preempt state law, requiring enforcement of arbitration agreements in state and federal courts, it does not necessarily follow that such agreements must be enforced with the remedy of specific performance); 296-297 (arguing that it was dicta when, in *Southland* and its progeny, the Court stated that specific performance was the required remedy for violations of an arbitration clause in state court (citing *Southland*, 465 U.S. at 4 (California state law voiding arbitration clauses in franchise agreements preempted—this was dicta because there was no state law holding that such agreements cannot be specifically enforced); *Perry*, 482 U.S. 483 (1983) (California labor law that allowed civil actions in court for wage collection, despite existence of arbitration clause, is preempted).

- Stevens, J.: *Southland*, 465 U.S. at 18 (dissenting on the enforceability of the arbitration clause) (explaining that the scope of preemption under the FAA should be limited and leave unaffected other areas of law that can, in his view, be properly regulated by the states without frustrating the intent of the FAA drafters); *Perry*, 482 U.S. at 493 ("It is only in the last few years that the Court has effectively rewritten the [FAA] to give it a pre-emptive scope that Congress certainly did not intend.").

*Southland* has also been widely criticized by the academy. See, e.g., Schwartz, David; "The Federal Arbitration Act and the Power of Congress over State Courts," 83 Or. L Rev 542 (2004); Moses, Margaret; "Statutory Misconstruction; How the Supreme Court Created a Federal Arbitration Law Never Enacted by Congress" 34 Fla State Univ Law Rev 99 (2006). But it is also clearly-established mandatory authority.

[4] This gendered syntax, penned in 1824, is outdated, much like the limited conception of the commerce clause asserted in the sentence.

contribution to the national demand for wheat may be trivial alone, his contribution to that demand, taken together with that of many others similarly situated, is not trivial.).

In *Allied Bruce Terminix Companies, Inc. v. Dobson*, the plaintiff bought a home that turned out to be infested with termites. The seller, prior to the sale, had purchased insurance against this eventuality through a national termite-inspection company and transferred that insurance to buyer. Buyer brought an action for damages against company and seller; company moved to compel arbitration under their contract. The Supreme Court, holding that the FAA was intended to be co-extensive with the commerce clause, found that the FAA applied to the inspection contract for two reasons: the inspection company was a national concern and the company shipped goods into the forum from out-of-state. 513 U.S. at 269, 282.

In *Citizens Bank v. Alafabco, Inc.*, builder sued a bank that had provided financing for construction projects in Alabama. 539 U.S. 52 (2003). Builder and bank had recently restructured the debt and agreed to mandatory arbitration. The Alabama Supreme Court reversed an order to submit a contract dispute to arbitration, holding that the restructuring agreement did not have a "substantial effect on interstate commerce." *Id*. at 55. The state court explained that the restructured debt was not an interstate transaction, the funds did not originate out-of-state, nor was it part of an out-of-state project. *Id*. The U.S. Supreme Court reversed, criticizing the state court as "misguided" for "search[ing] for evidence that a 'portion of the restructured debt was actually attributable to interstate transactions' or that the loans 'originated out-of-state' or that 'the restructured debt was inseparable from any out-of-state projects.'" *Id*. at 56.

Instead of analyzing the transaction in this narrow fashion to determine whether a contract is within Congress' Commerce Clause power, the Court explained, trial courts must consider whether "in the aggregate the economic activity in question would represent 'a general practice … subject to federal control.'" *Id*. at 57, citing *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 236 (1948); *Perez v. United States*, 402 U.S. 146, 154 (1971); and *Wickard v. Filburn*, 317 U.S. at 127-128 (1942). Applying this test, the *Alafabco* Court pointed to three reasons sufficient to apply the FAA to the debt restructuring contract:

1) Builder conducted business throughout the southeastern United States;

2) The debt was secured by assets brought to Alabama from out-of-state.

3) The general practice of commercial lending has a "broad impact" on the national economy and Congress' power to regulate this industry is manifest.

Here, Plaintiffs argue that a home inspection does not "substantially affect" interstate commerce. Pltf's Surreply. at 2 (citing *Del Webb Communities, Inc. v. Partington*, 2009 WL 3053709, at *17 (D. Nev. Sept. 18, 2009).[5] In *Del Webb* a developer sued an inspection company

---

[5] Plaintiff also cites to *United States v. Lopez*. 514 U.S. 549 (1995) (holding that the Gun-Free School Zones Act exceeded Congress' commerce-clause power). This case provides little guidance here. As explained below, this Court's task is to determine whether arbitration of home inspection contracts, and the home inspection industry as a whole have a substantial impact on interstate commerce. *Lopez* explained that possession of a gun on school property is "in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id*. at 567. It's rather obvious that any contract for services could "substantially affect" interstate commerce under certain circumstances. And, the Supreme Court has explicitly held that *Lopez* did not "announce a new rule governing Congress' Commerce Clause power over concededly economic activity such as [debt-restructuring agreements.]. *Alafabco*, 539 U.S. at 58. As explained below, just as the Commerce Clause Power

for misrepresentations under the Lanham Act. The inspection company advertised its willingness to conduct home inspections for free; in exchange the company would sue developers for building code violations discovered through their inspections. The District Court could not determine on the summary judgment record whether the alleged misrepresentations had been "made in interstate commerce" because the content of the company's website, interstate mailings, and interstate marketing phone calls was undeveloped. *Id*. at \*16-17. And, the district court reasoned that it "cannot find that home inspections of Nevada homes have a substantial impact on interstate commerce. Any impact would be purely intrastate." *Id*. at \*17.

Here, the Court is bound by U.S. Supreme Court precedent. It therefore must reason as that Court did in *Allied Bruce* and *Alafabco*: in the aggregate, contracts entered by a national company to inspect homes substantially impact interstate commerce. Indeed, the Court supposes, it is manifest that the national real estate market would be affected if inspection costs were to rise in response to protracted litigation, if, for example, contracts to arbitrate claims were routinely invalidated. This reasoning utilizes the correct lens to analyze a commerce clause issue, unlike the relatively perfunctory analysis in *Del Webb*, which took an incorrectly narrow view.

Under this analysis, the Inspector Defendants are part of a national home inspection franchise called The BrickKicker. 2011 VT 118 ¶ 2; Def's Resp. to Surreply at 3. Therefore, the Court holds that the FAA applies to the contract between Plaintiffs and the Inspector Defendants.

### C. Vermont Law Disfavoring Arbitration is Preempted.

Preemption is "[t]he principle (derived from the Supremacy Clause) that a federal law can supersede or supplant any inconsistent state law or regulation. *Black's Law Dictionary*, 1216 (8th ed. 2004). State laws that single out arbitration agreements to make them unenforceable— for reasons that do not apply to other types of agreements—are preempted by the FAA. *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984). This is because the FAA only specifies common law contract defenses (such as duress or unconscionability) as permissible ways of invalidating such an agreement. See 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) (explaining that state laws outright prohibiting arbitration are preempted (citing *Preston v. Ferrer*, 552 U.S. 346, 353 (2008)), but so are doctrines normally thought to be neutral, such as duress or unconscionability, when they are "applied in a fashion that disfavors arbitration." (citing *Perry v. Thomas*, 482 U.S. 483; 492, n. 9 (1987)); see also, *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530 (2012) (state law refusing to enforce nursing home admittance arbitration contract preempted); *Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S. Ct. 1421, 1426-29 (2017) (state law—requiring clear statement in power of attorney agreement before an agent permitted to contract to arbitrate for principal—is preempted).

In *AT&T*, the Supreme Court analyzed whether the FAA preempted California's Discover Bank rule. Discover Bank allowed consumers to demand class or collective arbitration, even if their contract required individual arbitration. To use the Discover Bank rule, a consumer had to show three things: (1) they had agreed to a contract of adhesion, (2) damages were low, and (3) defendant schemed to cheat consumers. The rationale was that companies should not effectively immunize themselves against small dollar claims by prohibiting, through contract, collective and class actions where the cost of initiating the case would outweigh any recovery by an individual.

---

was not limited in *Alafabco* from regulating intrastate commercial lending, it cannot be stopped from regulating intrastate home inspections.

5

If this were allowed, the fashioners of the rule reasoned, consumers would forego meritorious claims because no rational lawyer would take a case where the filing fee is greater than the potential judgment. Thus, consumer contracts could effectively become exculpatory. A 5-4 majority led by Justice Scalia held that the Discover Bank rule, a judicial creation of the California Supreme Court, was preempted by the FAA. *AT&T*, 563 U.S. at 346-47.

Here, Plaintiffs cite to no authority under federal law for their argument that an arbitration clause must specify that it bars the parties from proceeding in court.[6] Instead they rely entirely on state law. See Pltf's Opp. at 2 (citing 12 V.S.A. §5652(b). Because federal law on arbitration applies to this case the Court rejects this argument. See *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 250 (2d Cir. 1991) ("state statutes such as the Vermont statute directly clash with… the Arbitration Act because they effectively reincarnate the former judicial hostility towards arbitration. Accordingly, we hold that… the Arbitration Act preempt[s] the Vermont statute.").

## II. *Glassford v. Brickkicker*, a 2011 Case Involving Similar Inspector Defendants, and a Similar Contract, Does Not Invalidate This Arbitration Clause.

The Vermont Supreme Court held, in a fractured 3-2 opinion, that the limitation on liability clause in the Inspector Defendants' contract was unenforceable because it acted in tandem with the arbitration clause to effectively bar all liability. The Court explained that the cost of filing a claim with the arbitrator, as selected in the contract, was greater than the damages allowed by the limitation clause. See 2011 VT 118 ¶ 16, 191 Vt. 1. Consumer contracts that in effect contain exculpatory terms are analyzed under *Dalury v. S-K-I Ltd.*, 164 Vt. 329, 332 (1995). A plurality of the Court held under the rationale from *Dalury* that the two offending clauses in tandem were unconscionable and therefore unenforceable; but the majority only invalidated the limitations clause.

Here, the limitation of liability clause used in *Glassford* has been excised from the contract. So, unlike *Glassford*, this contract is not exculpatory. The *Dalury* analysis therefore is of no consequence. Plaintiffs' argument to the contrary is conclusory and unconvincing. They state that the terms of the arbitration clause violate public policy and are "fundamentally unfair."[7] But, they fail to explain how the arbitration agreement is substantively or procedurally unconscionable. See, e.g., *Glassford*, 2011 VT 118 at ¶ 13 (explaining that a court must find substantive or procedural unconscionability to invoke unconscionability doctrine (citing *Val Preda Leasing, Inc. v. Rodriguez*, 149 Vt. 129, 135 (1987)). The Court will not supply a party,

---

[6] Plaintiffs cite to *Joder Building Corp. v. Lewis*. 153 Vt. 115 (1989). But that case did not mention the issue of preemption. Nor did it mention the Federal Arbitration Act. So, it is of little use here.

[7] Plaintiffs misread Justice Dooley's dissent in *Glassford*. Plaintiffs quote a statement by Justice Dooley recounting the argument made by the plaintiffs in the *Glassford* case. But they use that quotation to characterize Justice Dooley's opinion about the fairness of the arbitration clause. Pltf's Opp. at 4. However, Justice Dooley made no such assessment. Rather, after quoting the plaintiff's arguments he explained that he would have remanded for the trial court to assess unconscionability of the arbitration clause alone, rather than, as the majority did, hold that both the arbitration clause and the limited liability clause were unenforceable. Compare *Glassford v. Brickkicker*, 2011 VT 118 at ¶ 35 (Dooley, J. dissenting) and *Id.* at ¶ 30 (explaining, in the majority opinion, that the arbitration clause is unenforceable because Defendants should not benefit from a major component (the arbitration clause) of its "scheme" to "offer an illusory remedy."). A Justice recounting the arguments by one party and remanding a case for further consideration does not mean that he or she has concluded that those arguments are meritorious.

6

represented by competent counsel, with arguments that it has not asserted. And even if it could do so, the gravamen of the unconscionability analysis in *Glassford*—that the limitation of liability clause makes the contract exculpatory—is not present here.

## III. Defendants Have Not Waived Arbitration.

### A. Defendants' Request that the Court Dismiss the Case During the Pendency of the Arbitration is Denied.

The FAA provides that if a case is filed in *federal court* when it actually is subject to arbitration, a party seeking to enforce the arbitration clause is entitled to a stay "until such arbitration has been had in accordance with the terms of the agreement…" 9 U.S.C. ¶ 3 (emphasis supplied). This section of the FAA has not been held to preempt state law. Nor could it. See, e.g., *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 289 (1995) (Thomas, J. dissenting) ("Most sections of the [FAA] plainly have no application in state courts, but rather prescribe rules for federal courts… [quoting from Section 3].") As Defendants have noted, the Vermont Supreme Court has allowed for the possibility that dismissal is a proper remedy when seeking to enforce an arbitration agreement. *Hermitage Inn Real Estate Holding Co., LLC v. Extreme Contracting, LLC*, 2017 VT 44, ¶ 43. But, here Defendants have not presented any argument that dismissal is preferential to the more common remedy—a stay pending arbitration. See 9 U.S.C. ¶¶ 3-4. Absent a rationale for departing from the norm, the Court adopts the usual remedy to the invocation of an arbitration clause.

### B. Defendants Have Not Waived Their Right to Arbitration by Moving for Dismissal on the Merits in the Same Motion Where They Have Asserted That Right.

A party can waive their contractual right to arbitration by proceeding in court in a fashion that "express[es] its intent to litigate." *Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 626 F.3d 156, 159 (2d Cir. 2010). Here, the question is whether a defendant's motion to dismiss, which both invokes the arbitration clause and also argues for dismissal on the merits, constitutes such a waiver?

There is no mandatory authority in state or federal court on this question. And persuasive authorities are split. Some circuits have stated that "a party does not waive its right to arbitrate merely by filing a motion to dismiss." *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004). Others have refused to find waiver where the Rule 12 motion invokes a jurisdictional defense, *Dumont v. Saskatchewan Government Ins.*, 258 F.3d 880 (8th Cir. 2001), or where, in the court's estimation, the claims are frivolous, *Khan v. Parsons Global Services, Ltd.*, 521 F.3d 421, 427 (D.C. Cir. 2008). One consideration, when a party moves to dismiss on the merits while simultaneously demanding that an arbitration agreement be enforced is that they not get to play "heads I win, tails you lose" by litigating an issue twice: in court, and then at the arbitration. *Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917, 922 (8th Cir. 2009). As the court in *Hooper* recognized, "motions to dismiss are not homogeneous." *Id*. Courts are instructed to consider the totality of circumstances. *Id*; *Louisiana Stadium*, 626 F.3d at 159 ("the key to a waiver analysis is prejudice.").

Here the Court concludes that there is no waiver for three reasons:

1) The Court has analyzed the invocation of the arbitration agreement as a threshold question. Therefore, submitting any claims to arbitration, as contracted, will not

7

provide the Inspector Defendants a second bite at the proverbial apple because this Court has refrained from considering the merits here.

2) There was no delay in Defendants' assertion of their right to arbitrate. Rather, they submitted it when their first responsive pleading came due.

3) Furthermore, to whatever extent Plaintiffs may have been prejudiced by having to respond to merits arguments for dismissal, that burden is lessened by the fact that they will still likely have to contend with substantially similar arguments in whatever venue the claims are ultimately decided.

For these reasons, the Court holds that here the Inspector Defendants have not waived their right to arbitration by simultaneously filing a motion to dismiss on the merits.

## IV. Arbitrator's Potential Conflict and Non-Existence Do Not Invalidate the Entire Arbitration Contract.

The contract requires arbitration with "Construction Arbitration Services, Inc." Plaintiffs have argued that this arbitrator has a conflict of interest and that it no longer exists. Defendants concede that if the arbitration clause is enforceable they consent to the use of another arbitrator, and ask to proceed "as if there was no company specified in the contract." Def's Rep. at 12. This is essentially a request to sever the forum selection clause from the mandatory arbitration clause. Indeed, the contract also contains a severability clause.[8]

The "cardinal rule" when interpreting a contract is the intent of the parties. *Sullivan v. Lochearn, Inc.*, 143 Vt. 150, 152 (1983). Severability is also known as "the blue pencil test." This is "[a] judicial standard for deciding whether to invalidate the whole contract or only the offending words. Under this standard, only the offending words are invalidated if it would be possible to delete them simply by running a blue pencil through them, as opposed to changing, adding, or rearranging words." *Black's Law Dictionary*, "Severability" (see "Blue-Pencil Test) (10th ed. 2014) (Westlaw). Because the parties contracted to allow courts to use the Blue-Pencil Test the Court holds that the issue of who will oversee arbitration of this case is severable. See also, *Dominguez v. Finish Line, Inc.*, 439 F. Supp. 2d 688, 691 (W.D. Tex. 2006) ("Because of this severability provision, the Court finds that the Indiana forum-selection clause does not render the otherwise valid arbitration agreement between the parties invalid or unenforceable.").

Plaintiffs have challenged the existence and impartiality of the contracted arbitrator. And Defendants do not contest that challenge. So, the Court hereby strikes the end of the first sentence[9] of the arbitration clause, starting at the word "under." The first sentence shall now be, in its entirety, the following: "Any dispute, controversy, interpretation or claim for, but not limited to, breach of contract, any form of negligence, fraud or misrepresentation or any other

---

[8] Any decision invalidating or not enforcing "any provision" of the contract "shall not affect the other provisions of the contract, and the contract shall be construed as if such invalid or enforceable [sic] provision had never been contained in the contract." Pltf's Ex. 4.

[9] This sentence originally stated, "Any dispute, controversy, interpretation or claim for, but not limited to, breach of contract, any form of negligence, fraud or misrepresentation or any other theory of liability arising out of, from or related to this contract, the inspection or inspection report shall be submitted to final and binding arbitration under Rules and Procedures of the Expedited Arbitration of Home Inspection Disputes of Construction Arbitration Services, Inc."

theory of liability arising out of, from or related to this contract, the inspection or inspection report shall be submitted to final and binding arbitration."

## ORDER

The Court hereby stays the proceedings between Plaintiffs and the Inspector Defendants pending the outcome of arbitration. Because the Court has invalidated the arbitrator selection clause, the parties shall meet and confer to identify a mutually-agreed substitute arbitrator. The Inspector Defendants' motion to dismiss, in all other respects, is hereby denied without prejudice.

SO ORDERED this 9th day of August, 2018

_____

Robert A. Mello, Superior Judge