Filed 10/31/23  Reynolds v. Bacon CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| DON J. REYNOLDS et al., | B320678 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 20STCV22155) |
| v. | |
| JAMES V. BACON, SR., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Small, Judge.  Affirmed.

Fisher Law Corporation and David S. Fisher for Defendant and Appellant.

Scali Rasumssen, Jeffrey W. Erdman, Colleen O'Brien and Janae L. Hill for Plaintiffs and Respondents.

————————————

This case involves one part of a broader dispute among family members over the control of the Allen Gwynn Chevrolet dealership (AG Chevy or the dealership), which the litigants' family has owned and operated for generations. Plaintiff Nancy L. Reynolds is defendant James V. Bacon, Sr.'s sister. Plaintiff Don J. Reynolds is Nancy's son; plaintiff Stephen W. Bacon is James's son.[1] In a prior opinion, *Reynolds v. Bacon* (Mar. 22, 2023, B317784) [nonpub. opn.], we addressed a dispute in probate proceedings over control of family trusts that own shares of stock in the dealership. Now, we must deal with a motion to compel arbitration of lawsuits in which each side accuses the other of misconduct in operating the dealership and in corporate governance.

Don, Stephen, and Nancy (collectively, respondents) filed suit against James in June 2020. One week later, James filed a separate suit—which the parties refer to as the "Glendale action" after the location of the courthouse in which it was filed—against respondents over largely the same issues. The cases were consolidated and proceeded through nearly 18 months of litigation, at which point James filed a motion to compel arbitration of both consolidated cases on the basis of arbitration agreements Don and Stephen signed years earlier as part of their employment at the dealership.

The trial court denied the motion on the ground that James waived his right to compel arbitration by delaying too long, to the prejudice of respondents. James now challenges that ruling.

---

[1] We refer to the parties by their first names in order to avoid confusion. We intend no disrespect.

The analysis of this issue is complicated by the United States Supreme Court's decision in *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411 [142 S.Ct. 1708, 212 L.Ed.2d 753] (*Morgan*) holding that under the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.), federal law does not require a party opposing arbitration on the basis of waiver to prove it was prejudiced by the other party's delay. (*Morgan, supra,* at pp. 416-419 [142 S.Ct. at pp. 1712–1714].) California law has long required a showing of prejudice as a condition of waiver of the right to arbitrate (see, e.g., *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1203 (*St. Agnes*)). While our Supreme Court has taken up the question of how *Morgan* applies to cases decided in our state courts and under the California Arbitration Act (CAA; Code Civ. Proc., § 1280 et seq.) in *Quach v. California Commerce Club, Inc.* (2022) 78 Cal.App.5th 470, review granted August 24, 2022, S275121 (*Quach*), it has not yet decided the issue.

The trial court, which denied the motion to compel arbitration prior to *Morgan*, made no finding as to whether the arbitration agreement was governed by the FAA or CAA, presumably because at the time it made no difference in the analysis of the motion to compel. We need not decide that question either because we hold that even under the stricter *St. Agnes* test, there was substantial evidence to support the trial court's finding that James waived the right to arbitrate.[2] Accordingly, we affirm.

---

[2] Because we affirm the trial court's decision on the basis of waiver, we do not consider respondents' additional arguments for denying the motion to compel arbitration, namely that respondents' claims were outside the scope of the arbitration

3

## FACTS AND PROCEEDINGS BELOW

All four of the primary litigants in this case have been closely involved with the ownership and operation of AG Chevy for many years. James has been the president of the dealership for decades, and Don and Stephen worked there from the 1990s until 2020. Nancy was not a formal employee, but she alleges she worked informally for the dealership in exchange for compensation. The four control most of the shares in the dealership through trusts established at the direction of Nancy and James's parents.

The relationships among the family members grew increasingly hostile in the 2010s, as Don and Stephen accused James of mismanaging the dealership, and James alleged Don and Stephen stole from the dealership by authorizing bonus payments for themselves without James's knowledge. Matters came to a head in the spring of 2020, when James fired Don and Stephen and repossessed their company cars, along with Nancy's. Don, Stephen, and Nancy convened meetings of the dealership's board of directors in James's absence at which they passed resolutions reversing James's actions and sought to replace James as the dealer operator[3] of the dealership. James claims

---

agreements, and that Nancy, who did not sign an arbitration agreement, was not bound by the agreements Don and Stephen signed.

[3] The parties do not explain what a dealer operator is, but the pleadings suggest that it is the individual recognized by General Motors to represent and make decisions on behalf of a dealership.

the board meetings were illegitimate[4] and the resolutions of no legal effect.

The two sides filed complaints against one another within the space of one week in June 2020. Respondents acted first, alleging 16 causes of action against James. These included derivative causes of action on behalf of the dealership for breach of fiduciary duties as officer and director of the dealership, unjust enrichment, and unfair competition. Respondents also asserted several direct causes of action. These included claims of conversion, for repossessing respondents' cars; intentional interference with contractual relations, for firing Don and Stephen and ceasing payments to Nancy; and several related claims. Respondents also sought declarations affirming that the three of them, together with James, constitute the board of directors, and that their actions at the May and June 2020 board meetings were legitimate. They also demanded an accounting of dealership finances.

Four days later, James filed a separate complaint,[5] the Glendale action, alleging four causes of action against

---

[4] The sides disagree as to who the members of the board were.

[5] We grant James's request for judicial notice, which includes the complaint in the Glendale action as well as documents related to the probate matter. The trial court took the Glendale action into account when denying James's motion to compel arbitration, and it is impossible to understand the court's reasoning without considering the Glendale complaint. The probate matter is not central to the issues in this appeal, but the inclusion of these documents does not prejudice respondents. Respondents' motion to strike related portions of James's opening brief is denied.

respondents. The first cause of action was a derivative claim on behalf of the dealership in which James alleged that Don and Stephen breached their fiduciary duties by taking unauthorized bonus payments, and that Nancy breached her fiduciary duties by failing to repay $60,000 that the dealership erroneously paid her. In the next two causes of action, James sought to remove Don, Stephen, and Nancy from the board, and to invalidate their actions at the May and June 2020 board meetings. The fourth cause of action was for declaratory relief on the same issues addressed in the previous causes of action. The trial court later ordered the two cases, along with the probate proceeding, consolidated.

Over the succeeding 18 months, the parties conducted extensive discovery, which led to frequent disputes. The trial court accused both sides of "weaponizing discovery," stated that "this case has become a discovery nightmare for all sides and the court," and ultimately appointed a referee to adjudicate the parties' discovery motions. In February 2022, James filed a notice of appeal from an order imposing discovery sanctions.

In addition to conducting discovery, James filed two demurrers. The first demurrer is missing from the appellate record, but it appears to have been based on respondents' failure to notify the dealership or its board in writing before filing a derivative suit on the dealership's behalf, and, as to the causes of action for interference with prospective economic advantage, the lack of a third party with which James allegedly interfered. The trial court sustained the demurrer in part and overruled it in part, and granted respondents leave to amend. Respondents filed a second amended complaint, and James again demurred on similar grounds. This time, respondents gave James, as

6

representative of the dealership, a copy of the complaint before filing it, but he alleged respondents did not give him enough time to investigate and respond before filing a derivative suit. James also alleged that the causes of action for interference with contractual relations and prospective economic advantage failed to state a cause of action because James acted on behalf of the dealership, and there was no third party with which he could have interfered. The trial court overruled the second demurrer. James later sought writ relief from the overruling of his second demurrer, a petition we denied. (*Bacon v. Superior Court* (May 12, 2022, B318944).)

In February 2022, less than a month after the trial court overruled the second demurrer, James filed a motion to compel arbitration of the two consolidated suits. This was, by all accounts, the first time James had mentioned the possibility of deciding the dispute in arbitration. The motion was based on arbitration agreements Don and Stephen signed nearly 20 years earlier, in 2002. The agreements stated that, "The [dealership] and the undersigned [e]mployee hereby agree that any dispute with any party (including the [dealership]'s affiliates, successors, predecessors, contractors, employees and agents) that may arise from [e]mployee's employment with the [dealership] or the termination of [e]mployee's employment with the [dealership], must be submitted for resolution by mandatory, binding arbitration." Further, "[b]inding [a]rbitration under this [a]greement shall be conducted in accordance with" the CAA, and "[t]he parties will be permitted to conduct discovery as provided

7

by California Code of Civil Procedure section 1283.05."[6]  James argued that all of Don and Stephen's claims were subject to arbitration under the agreement.  Although there was no indication that Nancy ever signed an arbitration agreement, James argued that she too was required to arbitrate because "the [c]laims by and against Nancy are intimately founded in and intertwined with the underlying contract obligations of the [a]rbitration [a]greement."

Respondents opposed the motion, arguing that James had waived any right to arbitration by delaying too long before demanding arbitration and by acting inconsistently with the right to arbitrate.  Respondents also argued that the consolidated cases were outside the scope of the arbitration agreement, and that Nancy was not bound by the arbitration agreements Don and Stephen had signed.

The trial court denied the motion to compel arbitration. The court did not issue a statement of decision, but explained its reasoning during a hearing.  The court found that "[James]'s actions in this litigation are inconsistent with the desire to arbitrate," noting that James spent more than a year vigorously litigating the case in court before raising the arbitration agreement.  In addition to the delay in asserting arbitration, James "filed his own lawsuit, the Glendale action."  The court found that respondents showed they had suffered prejudice from

---

**6** Under Code of Civil Procedure section 1283.05, "the parties . . . shall have the right to take depositions and to obtain discovery . . . as if the subject matter . . . were pending before a superior court."  (*Id*., subd. (a).)  However, "Depositions for discovery shall not be taken unless leave to do so is first granted by the arbitrator or arbitrators."  (*Id*., subd. (e).)

James's delay "by having to, in the crucible of trial court litigation, engage in discovery motion after discovery motion." Although "my sense is that the arbitration agreement probably does cover the claims here," including potentially the claims involving Nancy, the court found that "the request to arbitrate has come too late in the day."

James timely appealed from the trial court's order denying his motion to compel arbitration.

## DISCUSSION

### A. Background on Waiver of the Right to Arbitrate

The leading California case on waiver of an arbitration agreement is *St. Agnes*. The case involved the application of the FAA, but the court noted that "the federal and state rules applicable in this case are very similar" (*St. Agnes*, *supra*, 31 Cal.4th at p. 1194), and courts have subsequently applied *St. Agnes* in cases involving waiver of arbitration under the CAA. (See, e.g., *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 374–375.)

The court in *St. Agnes* recognized that a party may waive its contractual right to arbitration, but because of the "strong policy favoring arbitration agreements" under both state and federal law, "waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1195.) The court adopted a six-factor test that originated in the Tenth Circuit of the United States Court of Appeals in an FAA case (see *Peterson v. Shearson/American Exp., Inc.* (10th Cir. 1988) 849 F.2d 464, 467–468) to determine waiver. The six factors are as follows: " ' "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been

9

substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' " (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196, quoting *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 992.)

Although the *St. Agnes* court cautioned that "no single test delineates the nature of the conduct that will constitute a waiver of arbitration" (*St. Agnes*, *supra*, 31 Cal.4th at p. 1195), the court placed special emphasis on the question of prejudice. In cases decided under federal law, " 'The presence or absence of prejudice from the litigation of the dispute is the determinative issue . . . .' [Citations.]" (*Id.* at p. 1203, quoting *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 188.) The question of "whether or not litigation results in prejudice also is critical in waiver determinations" applying state law. (*St. Agnes*, *supra*, at p. 1203.) In reaching its decision, the Supreme Court in *St. Agnes* followed its own longstanding precedent that prejudice is required for waiver of the right to arbitrate unless there has been " 'judicial *litigation* of the merits of arbitrable issues.' " (*Keating v. Superior Court* (1982) 31 Cal.3d 584, 605, quoting *Doers*, *supra*, at p. 188.)

The United States Supreme Court's opinion in *Morgan* eliminated a showing of prejudice as a prerequisite for waiver of

10

arbitration in cases governed by the FAA and federal law.  The defendant in *Morgan* was initially content to litigate the plaintiff's Fair Labor Standards Act complaint in federal court, but after eight months filed a motion to compel arbitration under the FAA.  (*Morgan, supra*, 596 U.S. at pp. 414–415 [142 S.Ct. at p. 1711].)  Under the waiver standard applied by the Eighth Circuit before the case reached the high court, a party does not waive arbitration unless it "knew of the right [to arbitrate]; 'acted inconsistently with that right'; and—critical here—'prejudiced the other party by its inconsistent actions.' " (*Id.* at p. 415 [142 S.Ct. at p. 1712], quoting *Erdman Co. v. Phoenix Land & Acquisition, LLC* (8th Cir. 2011) 650 F.3d 1115, 1117.)  Because the parties "had not yet begun formal discovery or contested any matters 'going to the merits,' " the Eighth Circuit panel held that the delay in seeking arbitration had not prejudiced the plaintiff, and there had therefore been no waiver.  (*Morgan, supra*, at p. 415 [142 S.Ct. at p. 1712].)

The Supreme Court rejected the Eighth Circuit's rule requiring a showing of prejudice.  That rule, like the equivalent rule in California, had been justified on the basis of a " 'policy favoring arbitration.' " (*Morgan, supra*, 596 U.S. at p. 415 [142 S.Ct. at p. 1712].)  The court disagreed with the idea that this policy required creating a special test for waiver of arbitration not applicable to any other contractual right.  Instead, the purpose of the policy is " 'to place [arbitration] agreements upon the same footing as other contracts.' [Citation.]"  Or, in other words, "to make 'arbitration agreements as enforceable as other contracts, but not more so.' [Citation.]" (*Id.* at p. 418 [142 S.Ct. at p. 1713].)  Because "a federal court assessing waiver does not generally ask about prejudice" outside the context of arbitration,

11

there was no justification for doing so when considering agreements to arbitrate.  (*Id.* at p. 417 [142 S.Ct. at p. 1713].)

The Supreme Court did not direct the application of a specific test upon remand.  A court might elect to apply its existing waiver inquiry without a prejudice requirement, and ask whether the defendant "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right."  (*Morgan*, *supra*, 596 U.S. at p. 419 [142 S.Ct. at p. 1714].)  Alternatively, a court might "determine that a different procedural framework (such as forfeiture) is appropriate.  [Citation.]  Our sole holding today is that it may not make up a new procedural rule based on the FAA's 'policy favoring arbitration.' "  (*Ibid.*)

California courts have held that in cases "where the FAA applies, whether a party has waived a right to arbitrate is a matter of federal, not state, law" (*Davis v. Shiekh Shoes, LLC* (2022) 84 Cal.App.5th 956, 963), which suggests *Morgan* governs FAA cases filed in state court.  (See *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 619 ["On federal questions, intermediate appellate courts in California must follow the decisions of the California Supreme Court, unless the United States Supreme Court has decided the *same* question differently"].)  But *Morgan* elsewhere expressly states that it does not address any "role state law might play in resolving when a party's litigation conduct results in the loss of a contractual right to arbitrate" in an FAA case (*Morgan*, *supra*, 596 U.S. at p. 416 [142 S.Ct. at p. 1712]), suggesting questions may remain about its application to FAA cases in state court.

At a minimum, the existing case law requiring a showing of prejudice for a waiver of arbitration under the CAA (e.g., *Iskanian v. CLS Transportation Los Angeles, LLC*, *supra*, 59

12

Cal.4th at pp. 376–377; *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 30; *Keating v. Superior Court*, *supra*, 31 Cal.3d at p. 605) remains authoritative for now.

## B.    Application to This Case

The trial court decided the motion to compel arbitration before the Supreme Court released its opinion in *Morgan* and thus had no occasion to consider how *Morgan* affects the issue of waiver in this case.  Indeed, the trial court did not decide whether the arbitration agreement is governed by the FAA or the CAA,[7] presumably because "the federal and state rules applicable" to the question of waiver were, at the time, "very similar." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1194.)  In their appellate briefing, respondents argue that the arbitration agreements are governed by the FAA, and that they need not prove prejudice.  James, for his part, argues for state law and a prejudice requirement.  We need not decide this issue because it makes no difference to the outcome of the case.  There was sufficient evidence to support the trial court's finding that James waived his right to compel arbitration even under the stricter *St. Agnes* standard that the court applied.

The trial court applied the six-factor *St. Agnes* test and found that James waived any right to compel arbitration.  The court concluded that James acted " ' "inconsistent[ly] with the right to arbitrate" ' " (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196) by

_____

[7] The agreement under which James sought to compel arbitration mentions only the CAA, but this is not determinative because "[t]he FAA applies to any 'contract evidencing a transaction involving commerce' that contains an arbitration provision." (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 238.)

13

litigating the case extensively in trial court for more than 18 months.  By doing so, James also substantially invoked " ' " 'the litigation machinery' " ' " (*ibid.*) before notifying the opposing side of an intent to arbitrate.  Although the case was not yet close to the trial date, the court found that James " ' "delayed for a long period before seeking a stay." ' " (*Ibid.*)  In addition, James did not merely " ' "file[ ] a counterclaim without asking for a stay of the proceedings" ' " (*ibid.*), but went so far as to file his own separate lawsuit against the respondents on claims that he later contended were subject to the arbitration agreement.  Finally, the court found that the delay in seeking arbitration " ' " 'prejudiced' the opposing party" ' " (*ibid.*) by requiring respondents, as the trial court stated, "to . . . engage in discovery motion after discovery motion after discovery motion after discovery motion and go see a discovery referee, and so on."

" ' "The question of waiver is generally a question of fact," ' " and for that reason we generally review the trial court's decision for substantial evidence.  (*Quach*, *supra*, 78 Cal.App.5th at p. 478.)  Nevertheless, " 'Where the relevant facts are undisputed and only one inference may reasonably be drawn from the facts, the waiver issue may be reviewed de novo.' [Citation.]" (*Ibid.*; accord, *Davis v. Shiekh Shoes, LLC*, *supra*, 84 Cal.App.5th at p. 962.)

James takes issue with several of the trial court's findings, but we focus first on the question of prejudice.  We examined this issue extensively in our recent opinion in *Quach* and concluded that "a party's delay in asserting the right to arbitrate is not 'unreasonable' merely because the party could have asserted it at an earlier time.  Rather, what makes the delay 'unreasonable' is that it negatively impacts the party resisting arbitration, such as

14

by requiring that party to expend resources it otherwise would have saved by arbitrating the dispute, or by allowing the party asserting arbitration to take advantage of judicial processes not available in arbitration.' " (*Quach*, *supra*, 78 Cal.App.5th at p. 484.) Under this standard, we held that the defendant's 13-month delay before filing its motion to compel arbitration alone did not prejudice the plaintiff. (*Ibid.*)

James argues the trial court's finding on prejudice was inconsistent with *Quach*. Even if James indeed forced respondents "to . . . engage in discovery motion after discovery motion after discovery motion after discovery motion and go see a discovery referee, and so on," this did not prejudice respondents because under the terms of the arbitration agreement, the parties were entitled to the same discovery in arbitration as they could have obtained in court. The discovery disputes may have been unusually fierce, but there is no reason to believe they would have been easier in arbitration.

This argument overlooks another form of prejudice, however: James took advantage of the trial court by filing two demurrers. He also sought to appeal a sanctions order against him—relief that would have been unavailable in an arbitration. Shortly after the court overruled the second demurrer, making it clear that he could not win the case easily in court, James filed the motion to compel arbitration. This was nearly identical to the conduct the court found prejudicial in *Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443. The court rejected the defendant's attempt to take advantage of the system in this way, reasoning that " ' "[t]he courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and

15

arbitration." ' " (*Id*. at p. 1452.) Moreover, while the motion to compel arbitration was pending James continued to pursue relief unavailable to him in arbitration by filing a writ petition seeking review of the overruling of his second demurrer. (*Bacon v. Superior Court*, *supra*, B318944.)

James challenges the trial court's ruling in several other respects, none of which we find persuasive. He argues that the trial court erred by treating the Glendale action that he filed against respondents as tantamount to a counterclaim. We disagree. The Glendale action addresses many of the same issues as respondents' original complaint, including both the propriety of respondents' purported board resolutions and the circumstances of the termination of Don and Stephen's employment. James implicitly acknowledged as much when he filed a notice of related case in which he affirmed that the cases "involve[ ] the same parties and [are] based on the same or similar claims," and that they "arise[ ] from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact." By filing a cross-complaint, a defendant implicitly acknowledges that the trial court, rather than arbitration, is the proper venue for resolving a dispute. James effectively did the same by filing a separate complaint on the same subject matter with similar legal issues.

James argues that the Glendale action is different because he asserted only derivative claims against respondents, and "there is no arbitration agreement that applies to corporate governance matters." But several causes of action in respondents' operative second amended complaint are also derivative claims dealing with corporate governance matters, and

16

James moved to compel arbitration of not only respondents' entire case but also the complaint that James himself filed. We reject James's 11th hour attempt on appeal to reframe his argument about what is and what is not allegedly arbitrable after having previously taken the position the entirety of the two consolidated cases—including all corporate governance-related causes of action—was arbitrable.

James also argues that the trial court erred by overlooking several factors favorable to James: that there has been no determination on the merits of the case; that the timing of his motion to compel was reasonable in light of the delays associated with the COVID-19 pandemic; and that he did not act inconsistently with the right to arbitrate. We disagree with the last point—James's extended participation in litigation in trial court for nearly 18 months, including filing his own related complaint in court that he later claimed was subject to arbitration and seeking appellate intervention in the court proceedings, was indeed inconsistent with asserting his right to arbitrate. James may not be wrong about the other factors, but "no single test delineates the nature of the conduct that will constitute a waiver of arbitration." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1195.) The trial court did not err in determining that the factors against James's position outweighed those in his favor.

## DISPOSITION

The trial court's order denying appellant's motion to compel arbitration is affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED

                                        WEINGART, J.


We concur:


        ROTHSCHILD, P. J.


        CHANEY, J.