# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-2854

———————

Erdman Company; Erdman
Architecture & Engineering Company,

    Plaintiffs - Appellants,

v.

Phoenix Land & Acquisition, LLC;
Phoenix Health, LLC; et al.

    Defendants - Appellees,

Appeal from the United States
District Court for the
Western District of Arkansas.

———————

Submitted: March 29, 2011
Filed: August 16, 2011

———————

Before LOKEN, SMITH, and GRUENDER, Circuit Judges.

———————

LOKEN, Circuit Judge.

Erdman Company ("Erdman") and Erdman Architecture & Engineering Company ("EAEC") filed this diversity action to foreclose a contractor's lien and an architect's and engineer's lien against Phoenix Land & Acquisition, LLC ("Phoenix Land"), and Phoenix Health, LLC ("Phoenix Health"), as owners of the property, and three financial institutions with recorded security interests in the property. Phoenix Land filed a counterclaim, asserting breach of contract, negligence, breach of implied warranty, breach of fiduciary relationship, and deceptive trade practices by Erdman,

and negligence by EAEC. Erdman and EAEC now appeal the district court's[1] order denying their motion to compel arbitration of Phoenix Land's counterclaim. We have jurisdiction over an appeal from an interlocutory order "denying an application . . . to compel arbitration." 9 U.S.C. § 16(a)(1)(C). The district court held that Erdman waived the right to arbitrate by evidencing its intent to resolve the entire dispute through litigation. Reviewing the waiver determination *de novo* but the district court's underlying factual findings for clear error, we affirm. See Lewallen v. Green Tree Servicing, L.L.C., 487 F.3d 1085, 1090 (8th Cir. 2007) (standard of review).

## I.

Erdman, a Wisconsin-based contractor specializing in health care facilities, entered into a Design-Build Contract with Phoenix Land as Owner to design and build a one-story addition to a surgical center in Fort Smith, Arkansas. Section 12.2 of the Contract provided that "[a]ny controversy or claim arising out of or relating to this Contract or its breach not resolved by mediation, except for claims relating to Design-Builder's lien rights . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect." The Contract identified EAEC as a wholly-owned subsidiary of Erdman that would perform Erdman's obligations to provide Design Services for the project. The Contract was signed by Erdman's Executive Vice President on behalf of both Erdman and EAEC. Phoenix Health has an unexplained ownership interest in the project site but was not named or referred to in the Contract.

After work on the project began, Phoenix Land signed a series of change orders that altered the plans by adding a second floor "dead shell space" for future expansion and by allowing for the addition of a third floor at a later date. Excavation for the

---

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

elevator included in the new plans went below the area covered by a geotechnical report prepared for the project and penetrated an abandoned mineshaft. A sinkhole developed, damaging completed work and delaying the project. Erdman demanded time and extra monies to remediate this allegedly unforeseen condition. Phoenix Land investigated, concluded Erdman was responsible for the sinkhole, and refused to make progress payments when Erdman would not complete the project without additional funding. Erdman halted construction with the project not completed.

Erdman and EAEC then filed this action to foreclose their respective liens for amounts unpaid under the Contract. The Complaint also alleged a breach of contract claim against Phoenix Land, and unjust enrichment claims against Phoenix Land and Phoenix Health. Their answer denied the lien claims, asserting numerous affirmative defenses, and pleaded Phoenix Land's counterclaim. After obtaining a three-week extension, Erdman and EAEC filed their reply to the counterclaim, and Erdman moved to dismiss Phoenix Land's fraudulent misrepresentation claim or, in the alternative, for a more definite statement of that claim. On the same day, Erdman and EAEC moved to compel arbitration of the counterclaim and to stay adjudication of the counterclaim but permit adjudication of the lien claims pending the arbitration. Though they argued that there was nothing to arbitrate until Phoenix Land asserted its counterclaim, footnote 9 to their lengthy Motion to Compel acknowledged that their initial claims for breach of contract and unjust enrichment "are also covered by the agreement to arbitrate and . . . should also be referred to mediation and arbitration."[2] Two weeks later, Erdman and EAEC also filed a third party complaint against the geotechnical consultant and two Erdman subcontractors.

---

[2]The district court did not need to address Erdman's unsupported assertion in footnote 9 that its unjust enrichment claim against Phoenix Health, a non-party to the Contract, is arbitrable.

## II.

Federal policy favors arbitration as a form of dispute resolution, as reflected in the Federal Arbitration Act. 9 U.S.C. §§ 1 *et seq*. But a party may waive its contractual right to arbitrate. See Lewallen, 487 F.3d at 1090. Although the issue of waiver arises under a variety of arbitration agreements and in a variety of procedural settings, we apply a uniform three-factor test in determining whether a party has waived its right to arbitration, finding waiver when the party seeking arbitration "(1) knew of its existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by its inconsistent actions." Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc., 589 F.3d 917, 920 (8th Cir. 2009) (quotation omitted).

1. The first factor, whether Erdman and EAEC knew of the right to arbitrate, is obvious from the fact that Erdman, a sophisticated party with over fifty years of health care facility design and construction, drafted the Contract containing detailed mediation and arbitration provisions, and is presumed to know its contents. See Pinken v. Frank, 704 F.2d 1019, 1025 (8th Cir. 1983). Erdman and EAEC argue they lacked the relevant knowledge because all the claims in their initial complaint, including the breach of contract and unjust enrichment claims, "are covered by the carve-out language in the Contract's dispute resolution provision." This contention is frivolous because it is squarely contrary to footnote 9 in their Motion to Compel to the district court. As in Hooper, 589 F.3d at 921, we decline to disturb the district court's finding of knowledge.

2. The second factor, whether Erdman acted inconsistently with its right to arbitrate, is likewise clear on this record. "A party acts inconsistently with its right to arbitrate if the party substantially invokes the litigation machinery before asserting its arbitration right." Lewallen, 487 F.3d at 1090 (quotation omitted). The district court found that Erdman "initially decided to forego arbitration in attempting to

collect from Phoenix Land and Phoenix Health." Thus, unlike many waiver cases, where a defendant responded to the plaintiff's lawsuit and, at some point, asserted its right to arbitrate, Erdman and EAEC initiated the lawsuit, joining arbitrable contract and unjust enrichment claims against Phoenix Land for the alleged $2,559,948 unpaid contract balance without simultaneously seeking to arbitrate this contract dispute. In our view, that was an election sufficient to support the district court's finding that Erdman acted inconsistently with its right to arbitrate. "A party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims." Id. Indeed, we have found waiver of the right to arbitrate when a party engaged in litigation while expressly reserving its right to arbitrate. Hooper, 589 F.3d at 923.

The district court further found that Erdman's response to Phoenix Land's counterclaim was inconsistent with a party choosing arbitration over litigation. Erdman and EAEC moved for additional time to respond and then participated in a Rule 26(f) conference resulting in a report that did not even mention arbitration, a clear indication Erdman intended to litigate all claims. Five days after that conference, Erdman attacked Phoenix Land's claim of fraudulent misrepresentation on the merits, filing a motion to dismiss or for more definite statement. The district court also found that Erdman's non-compulsory claims against the third party defendants "demonstrates the intent . . . to utilize the present litigation to resolve all aspects of its dispute with Phoenix Land and Phoenix Health, including those that involve third parties." At oral argument, counsel for Erdman conceded that findings as to its intent are reviewed for clear error.

"To safeguard its right to arbitration, a party must do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." Lewallen, 487 F.3d at 1091 (quotation omitted). We agree with the district court that Erdman -- and EAEC to the extent it had a right as subcontractor to invoke the Contract's arbitration remedy -- failed to do so.

-5-

3. The third factor, prejudice to the party opposing arbitration, is the most controversial. There is a circuit split over whether the party asserting waiver must show prejudice. See Hooper, 589 F.3d at 923 n.8. The Supreme Court in the Term just ended granted a petition for a writ of certiorari presenting the question -

> Under the Federal Arbitration Act ("FAA"), should a party be required to demonstrate prejudice after the opposing party waived its contractual right to arbitrate by participating in litigation, in order for such waiver to be binding and irrevocable?

Stok & Assocs., P.A. v. Citibank, N.A., 131 S. Ct. 1556 (2011). However, that case was dismissed by agreement of the parties, 131 S. Ct. 2955 (2011), so the prejudice issue remains unsettled.

Although we apply the prejudice requirement even when the party who belatedly seeks to arbitrate commenced the litigation, "[w]hether inconsistent actions constitute prejudice is determined on a case-by-case basis." Stifel, Nicolaus & Co., Inc. v. Freeman, 924 F.2d 157, 159 (8th Cir. 1991). "The prejudice threshold . . . is not onerous." Hooper, 589 F.3d at 923, quoting Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 390 (7th Cir. 1995) ("Other courts require evidence of prejudice -- but not much.").

Here, as the district court noted in finding the requisite prejudice, "All the claims in this case revolve around the issue of who was at fault in the matter of the sinkhole." Therefore, although Erdman's motion to compel arbitration urged that the lien claims not be stayed pending arbitration, adjudication of the amounts owing on those claims will require determination of which contracting party was to blame for the increased sinkhole costs that caused the project to fail. See Ark. Code Ann. § 18-

44-127(a).[3] Presumably, the district court could stay the entire litigation, including the lien claims, while the issue of sinkhole fault is determined in arbitration. But Erdman and EAEC instead asked to proceed immediately with their lien claims, free of Phoenix Land's counterclaim. If that occurred, and the arbitration was not stayed, the parties would simultaneously litigate the same fault issue in two forums. Prejudice results when "[c]ompelling arbitration would require a duplication of effort." Hooper, 589 F.3d at 923 (quotation omitted).

When the lien claims were filed, counsel for Erdman knew that Phoenix Land would assert contract defenses and could reasonably anticipate the other claims asserted by Phoenix Land in its counterclaim. Yet Erdman and EAEC deliberately elected to litigate, a procedure that held out substantial advantages. It permitted them to assert an unjust enrichment claim against Phoenix Health, a non-party to the Contract who could not be compelled to arbitrate. It avoided the issue of whether subcontractor EAEC could demand arbitration of claims by and against it relating to the Contract. And it eventually allowed them to bring third party defendants into the lawsuit who could not be compelled to arbitrate. All these parties as well as Phoenix Land incurred litigation expense as a result of Erdman's deliberate decision to forego arbitration and litigate the entire dispute. We cannot say that the district court erred in finding that Phoenix Land suffered prejudice. Compare Lewallen, 487 F.3d at 1093; S.E. Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC, 588 F.3d 963, 969 (8th Cir. 2009); Kelly v. Golden, 352 F.3d 344, 349-50 (8th Cir. 2003).

In the realm of construction industry disputes, where contracts tend to be standardized and efficient resolution is of great importance to general contractors, subcontractors, architects, engineers, and materialmen, it makes little sense to litigate endlessly over the details of prejudice when the party who drafted the contract

---

[3]Thus, this is not a case where the counterclaim "can be viewed as separate and distinct from the complaint brought by" the party seeking arbitration. Commercial Union Ins. Co. v. Gilbane Bldg. Co., 992 F.2d 386, 387 n.1 (1st Cir. 1993).

providing the right to choose arbitration has unequivocally chosen to litigate the entire dispute in a single lawsuit, and then changes its mind. The federal policy favoring arbitration does not require a showing of prejudice in this situation, unlike many others.[4] That policy does not go so far as to "allow or encourage the parties to proceed, either simultaneously or sequentially, in multiple forums." Cabinetree, 50 F.3d at 390. But in any event, we agree with the district court that a sufficient showing of prejudice was made.

We affirm the district court's Order of July 29, 2010. We deny appellees' motions to strike and to file a surreply brief.

———————————————————

---

[4]We can trace the origins of our prejudice requirement to Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2d Cir. 1968). In that case, however, the court distinguished cases, like this one, that "involved waiver by a plaintiff who brought suit on a contract without seeking to avail himself of its arbitration clause on the ground that a party should not thus first set in motion judicial proceedings and then arrest them." Id. at n.8 (quotation omitted).