24-696-cv
*Doyle v. UBS Fin. Servs., Inc., et al.*

# United States Court of Appeals

# For the Second Circuit

August Term 2024

Argued: January 7, 2025
Decided: July 14, 2025

No. 24-696

CYNTHIA T. DOYLE, MOLLIE T. BYRNES, JAMES WEISS,
DAVID WELBOURN, IN THEIR CAPACITIES AS TRUSTEES OF THE PETER
AND ELIZABETH C. TOWER FOUNDATION,

*Plaintiffs-Appellees,*

*v.*

UBS FINANCIAL SERVICES, INC., JAY S. BLAIR,

*Defendants-Appellants,*

JOHN N. BLAIR,

*Defendant.*[*]

Appeal from the United States District Court
for the Western District of New York
No. 1:22CV00276,
Frank P. Geraci, Jr., *Judge.*

---

[*] The Clerk is respectfully instructed to amend the caption as set forth above.

Before: WALKER, ROBINSON, and MERRIAM, *Circuit Judges*.

Defendants-appellants UBS Financial Services, Inc. and Jay S. Blair (collectively, the "UBS Defendants") appeal from the District Court's February 23, 2024, decision and order denying their motion to compel arbitration.

Plaintiffs-appellees Cynthia T. Doyle, Mollie T. Byrnes, James Weiss, and David Welbourn, in their capacities as trustees of the Peter and Elizabeth C. Tower Foundation (collectively, "Plaintiffs"), brought claims under the Investment Advisers Act of 1940, 15 U.S.C. §80b-1 *et seq.*, and New York state law, alleging principally that the UBS Defendants breached their fiduciary duties to the Foundation in their management of the Foundation's investment advisory accounts. The UBS Defendants moved to stay or dismiss this action under the *Colorado River* abstention doctrine. After that motion was denied, the UBS Defendants moved to compel arbitration pursuant to the Federal Arbitration Act. The District Court denied the motion, finding that Plaintiffs presented sufficient evidence to place the validity of the arbitration agreement at issue for trial.

In 2022, the Supreme Court held in *Morgan v. Sundance, Inc.* that when evaluating whether a party has waived enforcement of an arbitration agreement, courts may not impose "a prejudice requirement." 596 U.S. 411, 419 (2022). But we may evaluate a party's conduct, asking: Did the party now seeking to compel arbitration "knowingly relinquish the right to arbitrate by acting inconsistently with that right?" *Id.* We conclude that by their actions, including by affirmatively seeking a resolution of their dispute in the District Court, the UBS Defendants waived their right to compel arbitration. We therefore **AFFIRM** the District Court's denial of the UBS Defendants' motion to compel arbitration on the alternative ground of waiver.

BRIAN E. WHITELEY, Barclay Damon LLP, Boston, MA (Benjamin Reed Zakarin, Barclay Damon LLP, New York, NY, *on the brief*), *for Plaintiffs-Appellees*.

JOSHUA SCOTT BRATSPIES, Sherman Atlas Sylvester & Stamelman LLP, New York, NY (Terrance P. Flynn, Harris Beach Murtha Cullina PLLC, Buffalo, NY, *on the brief*), *for Defendants-Appellants*.

SARAH A. L. MERRIAM, *Circuit Judge*:

Defendants-appellants UBS Financial Services, Inc. ("UBS") and Jay S. Blair (collectively, the "UBS Defendants") appeal from the District Court's February 23, 2024, decision and order denying their motion to compel arbitration.

Plaintiffs-appellees Cynthia T. Doyle, Mollie T. Byrnes, James Weiss, and David Welbourn ("Plaintiffs"), in their capacities as trustees of the Peter and Elizabeth C. Tower Foundation (the "Foundation"), bring claims pursuant to the Investment Advisers Act of 1940, 15 U.S.C. §80b-1 *et seq.* ("IAA"), and New York state law, alleging principally that the UBS Defendants breached their fiduciary duties to the Foundation in their management of the Foundation's investment accounts. Specifically, they allege that defendant John N. Blair[1] – the father of defendant-appellant Jay Blair – improperly used his position as Attorney Trustee for the Foundation to place the Foundation's assets with his son Jay's investment firm, the Arthurs Malof Group, which became affiliated with UBS in 2015. When the Foundation's accounts were moved to UBS, John Blair executed an agreement with UBS – purportedly on behalf of the Foundation – that included an

---

[1] The claims against John Blair are not before us on appeal because the parties agree that the arbitration provision in the UBS Agreement does not cover the claims against him.

arbitration clause.

On July 1, 2022, John Blair filed a motion to dismiss, arguing principally that the action should be dismissed under the *Colorado River* abstention doctrine and for failure to state a claim. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). On July 29, 2022, the UBS Defendants filed a "response" to the motion to dismiss, in which they joined John Blair's motion and similarly argued for dismissal primarily on *Colorado River* abstention grounds. The District Court denied the motion to dismiss as to all defendants on January 26, 2023. On March 10, 2023, the UBS Defendants filed a motion to compel arbitration under the Federal Arbitration Act ("FAA"). The District Court denied the motion to compel arbitration, finding that Plaintiffs had presented sufficient evidence to place the validity of the arbitration agreement at issue for trial. The UBS Defendants now appeal from that denial.

We conclude, applying the Supreme Court's 2022 decision in *Morgan v. Sundance, Inc.*, that the UBS Defendants "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." 596 U.S. 411, 419 (2022). Accordingly, we **AFFIRM** the District Court's denial of the UBS Defendants' motion to compel arbitration on the alternative ground of waiver.

## I.  BACKGROUND

This case centers on a dispute over certain brokerage accounts of the Foundation, a charitable trust, that were held at UBS and serviced by a financial investment firm called the Arthurs Malof Group, which employed Jay Blair. Plaintiffs are trustees of the Foundation.  Defendant John Blair was appointed the Foundation's Attorney Trustee in May 2006, and by that appointment he became one of the three voting members of the Foundation's Investment Committee.  The Arthurs Malof Group served as the financial advisor for the Foundation's brokerage accounts; the Group operated within various investment banks over the years, eventually moving from Morgan Stanley to UBS in 2015.

On September 3, 2015, in connection with the opening of the Foundation's brokerage accounts at UBS, John Blair, purporting to act in his role as a trustee of the Foundation, executed a client relationship agreement (the "UBS Agreement") governing the Foundation's relationship with UBS.  The UBS Agreement contained an arbitration clause expressly providing for arbitration of "any controversy, claim or issue in any controversy that may arise . . . including but not limited to controversies, claims or issues in any controversy concerning any account, transaction, dispute or the construction, performance or breach of this

Agreement or any other agreement."  Joint App'x at 1024.

The Complaint alleges that after the move to UBS, the Foundation was unable to obtain information regarding its investments except by proceeding through John Blair; that the other Foundation Trustees did not receive regular statements for the accounts; and that the Foundation never received a copy of "the underlying investment advisory contract purportedly made by the Foundation and UBS."  *Id.* at 22 ¶63.  In June 2020, based in part on these issues, Plaintiffs Doyle and Byrnes – "two of the three voting members of the Investment Committee" – initiated the process of selecting an alternative investment advisor to replace UBS.  *Id.* at 23 ¶66.  In September 2020, a majority of the Investment Committee voted to terminate UBS and retain a different firm as the Foundation's investment advisor.  John Blair voted against the transfer.

In November 2020, the Foundation adopted a resolution entitled "Unanimous Vote of the Disinterested Trustees of the Peter and Elizabeth C. Tower Foundation to Remove John N. Blair as Attorney Trustee," and John Blair was removed for cause as Attorney Trustee.  *Id.* at 134-35.  On April 8, 2022, the Foundation Trustees adopted a resolution authorizing the commencement of legal proceedings against Defendants.

6

On April 11, 2022, Plaintiffs brought this action alleging that UBS and Jay Blair breached their fiduciary duties of care and loyalty to the Foundation under the IAA; that John Blair aided and abetted that breach; that Jay Blair was negligent in managing the Foundation's brokerage accounts; and that UBS is liable for Jay Blair's negligence under the doctrine of respondeat superior. Plaintiffs contend that "Defendant John Blair hatched a scheme that ultimately resulted in the creators of the Foundation, Peter and Elizabeth C. Tower, placing hundreds of millions of dollars of assets under the investment stewardship of his son, defendant Jay S. Blair" and that UBS "countenanc[ed] and indeed sanction[ed] this conduct." *Id.* at 9 ¶2, 10 ¶4. They further assert that Jay Blair and UBS breached their fiduciary duties in managing the Foundation's accounts. Plaintiffs seek rescission of the UBS Agreement, restitution, compensatory and punitive damages, as well as costs and fees.

## II.     STANDARD OF REVIEW

"We review *de novo* the denial of a motion to compel arbitration." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 72 (2d Cir. 2017) (citation omitted). "The question of whether a party's pretrial conduct amounts to waiver of arbitration is purely a legal one, and our review of this issue is *de novo*." *Leadertex, Inc. v. Morganton*

7

*Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995).

### III.    DISCUSSION

Plaintiffs contend that the UBS Defendants' "participation in the litigation and material delay in demanding arbitration have resulted in a waiver of any right they may have had to demand arbitration." Appellees' Br. at 27. Plaintiffs raised this argument in the District Court, but the District Court did not reach it, instead denying the motion to compel arbitration on the ground that the validity of the arbitration agreement was a factual issue that could not be resolved as a matter of law. *See Doyle v. UBS Fin. Servs., Inc.*, No. 1:22CV00276(FPG), 2024 WL 1146620, at *8 (W.D.N.Y. Feb. 23, 2024).

"We are free to affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied." *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machs. Corp.*, 110 F.4th 106, 113 (2d Cir. 2024) (citation and quotation marks omitted). We affirm the District Court's denial of the motion to compel arbitration on the alternative ground that the UBS Defendants waived their right to seek arbitration. In so doing, we apply the legal standard set out in the Supreme Court's recent decision in *Morgan*.

8

**A.    Standard for Finding Waiver of Arbitration before *Morgan***

Before the decision in *Morgan*, this Court had identified three factors to be evaluated in determining whether a party had waived its right to arbitration under the FAA: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *La. Stadium & Expo. Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (citation and quotation marks omitted). These factors were derived from our earlier decision in *Carcich v. Rederi A/B Nordie*, 389 F.2d 692 (2d Cir. 1968). Rather than creating a "rigid formula or bright-line rule for identifying when a party has waived its right to arbitration," we applied these factors "to the specific context of each particular case." *La. Stadium & Expo. Dist.*, 626 F.3d at 159. But our caselaw was clear that "proof of prejudice" was not simply one among several factors to be considered. Instead, under our pre-*Morgan* precedent, prejudice was a *mandatory* precondition to a finding of waiver. "The key to a waiver analysis is prejudice. Waiver of the right to compel arbitration due to participation in litigation may be found *only when prejudice to the other party is demonstrated*." *Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d 102, 105 (2d Cir.

2002) (per curiam) (citation and quotation marks omitted) (emphasis added).

The *Carcich* standard, and its reliance on prejudice, was anchored in a belief that agreements to arbitrate are special – that they are to be treated differently than other agreements. "In view of the overriding federal policy favoring arbitration," we held, "waiver is not to be lightly inferred, and mere delay in seeking a stay of the proceedings without some resultant prejudice to a party cannot carry the day." *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 461 (2d Cir. 1985) (citation and quotation marks omitted). Indeed, while our decisions did consider the other two factors of time elapsed and amount of litigation activity, we returned in every case to prejudice, because "the rule of *Carcich* is that delay in seeking arbitration does not constitute a waiver absent prejudice to the opposing party." *Id.* at 463. Simply stated, the prejudice requirement was the dominant focus of our waiver inquiry for decades.

*Carcich* was widely adopted by other Courts of Appeals; those courts fully adopted not only its holding, but its rationale regarding the special treatment afforded to agreements to arbitrate *and* the absolute requirement of prejudice to find waiver of the right to compel arbitration. *See, e.g., Gavlik Constr. Co. v. H. F. Campbell Co.*, 526 F.2d 777, 783 (3d Cir. 1975); *Valero Refin., Inc. v. M/T Lauberhorn*,

10

813 F.2d 60, 66 (5th Cir. 1987); *Midwest Window Sys., Inc. v. Amcor Indus., Inc.*, 630 F.2d 535, 537 (7th Cir. 1980); *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115, 1120 n.4 (8th Cir. 2011); *Shinto Shipping Co. v. Fibrex & Shipping Co.*, 572 F.2d 1328, 1330 (9th Cir. 1978).

B.    The Supreme Court's Decision in *Morgan*

In *Morgan*, the Supreme Court reviewed a case challenging the Eighth Circuit's then-existing rule that "a party waives its contractual right to arbitration if it knew of the right; acted inconsistently with that right; *and – critical here – prejudiced the other party by its inconsistent actions*."  *Morgan*, 596 U.S. at 415 (citation and quotation marks omitted) (emphasis added).  The Eighth Circuit had "sent Morgan's case to arbitration" because it did not find "the prejudice requirement satisfied."  *Id.*  As the Supreme Court acknowledged, "[t]he Eighth Circuit's arbitration-specific rule derive[d] from a decades-old Second Circuit decision," *Carcich*, "which in turn grounded the rule in the FAA's policy."  *Id.* at 417.

The Supreme Court vacated the Eighth Circuit's decision and abrogated the whole line of cases derived from *Carcich*, holding that a court "may not make up a new procedural rule based on the FAA's 'policy favoring arbitration,'" such

11

as "condition[ing] a waiver of the right to arbitrate on a showing of prejudice."

*Id.* at 419, 417.[2]  Rather, courts should apply the same rules applicable "[o]utside

the arbitration context, [where] a federal court assessing waiver does not

generally ask about prejudice."  *Id.* at 417.  The focus must be "on the actions of

the person who held the right" and not "the effects of those actions on the

opposing party."  *Id.*  "Accordingly, a court must hold a party to its arbitration

contract just as the court would to any other kind.  But a court may not devise

novel rules to favor arbitration over litigation."  *Id.* at 418.[3]

　　*Morgan* expressly rejected the rule that had previously been adopted by at

---

[2] On remand, neither the District Court nor the Eighth Circuit had occasion to reconsider the merits because the parties reached a settlement agreement that was approved by the District Court.  *See* Order, *Morgan v. Sundance, Inc.*, No. 4:18CV00316(SHL) (S.D. Iowa Dec. 15, 2022), ECF No. 48.

[3] The Supreme Court declined to address whether "waiver," as opposed to "forfeiture, estoppel, laches, or procedural timeliness," is the proper analytical framework within which to assess whether "a party's litigation conduct results in the loss of a contractual right to arbitrate."  *Morgan*, 596 U.S. at 416.  Because the Courts of Appeals generally resolved such cases "using the terminology of waiver," the Court "assume[d] without deciding they are right to do so."  *Id.* at 417.  We see no reason to depart from the framework and terminology of waiver here.  We recognize that, in the context of waiver generally, we typically use the language of *intentional* relinquishment rather than *knowing* relinquishment.  *See, e.g.*, *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999) (stating that waiver refers to "a litigant's intentional relinquishment of a known right").  But we see no material distinction between "knowing" and "intentional"

least nine Circuits – including the Second Circuit – that "the strong federal policy favoring arbitration" supported an arbitration-specific rule requiring a showing of prejudice to the opposing party before waiver could be found.[4] *Id.* at 416 & n.1. But "the usual federal rule of waiver does not include a prejudice requirement," the Court observed, and no such requirement is proper in the arbitration context. *Id.* at 419. Instead, the Court found, the Eighth Circuit (and other courts) may simply focus on the conduct of the party seeking to arbitrate, asking: Did that party "knowingly relinquish the right to arbitrate by acting inconsistently with that right?" *Id.* We apply that new rule here.

### C.    Application of *Morgan* by Other Courts

Since *Morgan* was decided in May 2022, courts have differed in their interpretations and applications of its holding. Most Courts of Appeals to apply

---

relinquishment of the right to arbitrate, especially because, to discern either, we look to the conduct of the waiving party.

[4] *See Joca-Roca Real Est., LLC v. Brennan*, 772 F.3d 945 (1st Cir. 2014); *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115 (8th Cir. 2011); *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345 (6th Cir. 2003); *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063 (3d Cir. 1995); *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507 (11th Cir. 1990); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494 (5th Cir. 1986); *ATSA of Cal., Inc. v. Cont'l Ins. Co.*, 702 F.2d 172 (9th Cir. 1983); *Carolina Throwing Co. v. S & E Novelty Corp.*, 442 F.2d 329 (4th Cir. 1971) (per curiam); *Carcich v. Rederi A/B Nordie*, 389 F.2d 692 (2d Cir. 1968).

*Morgan* have focused narrowly on the parties' actions, assessing whether the moving party acted inconsistently with the right to arbitrate.[5]  The Sixth Circuit has assumed that the prejudice requirement could simply be eliminated, leaving in place the remainder of its pre-*Morgan* test.[6]  Others have focused on *Morgan*'s

---

[5] *See, e.g.*, *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 471 (9th Cir. 2023) ("There is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather, we consider the totality of the parties' actions." (citation and quotation marks omitted)); *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 339 (3d Cir. 2023) ("In analyzing whether waiver has occurred, a court focuses on the actions of the party who held the right and is informed by the circumstances and context of each case." (citations and quotation marks omitted)); *In re Pawn Am. Consumer Data Breach Litig.*, 108 F.4th 610, 613 (8th Cir. 2024) ("The focus of waiver, after all, is on the actions of the person who held the right, not the effects of those actions on the opposing party." (citation and quotation marks omitted)); *SZY Holdings, LLC v. Garcia*, No. 23-1305, 2024 WL 3983944, at *3 (4th Cir. Aug. 29, 2024) ("The relevant question, then, is whether the party requesting arbitration knowingly relinquished the right to arbitrate by acting inconsistently with that right." (citation and quotation marks omitted)).

[6] *See Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 974 (6th Cir. 2024) ("At a minimum, *Morgan* eliminated the prejudice requirement.  In this case, we need not decide whether *Morgan* did more than that because the parties agree that, once stripped of its prejudice requirement, our pre-*Morgan* caselaw remains intact.").

14

instruction that arbitration agreements pursuant to the FAA are to be construed under well-established principles of contract law.[7]

This Court has not yet articulated in a precedential opinion the proper standard to be applied to waiver claims after *Morgan*. As a result, district courts within the Second Circuit have applied *Morgan* in different ways. In a recent summary order, we described the current state of our law as follows:

> Since *Morgan*, this court has not clarified in a precedential opinion the test for evaluating waiver of arbitration, leading district courts in the Second Circuit to differ in their description of their assessments and in their reliance on our prior caselaw. *Compare, e.g.*, *Boustead Secs., LLC v. Leaping Grp. Co.*, 656 F. Supp. 3d 447, 451 n.7 (S.D.N.Y. 2023) (noting that, in absence of a clear Second Circuit test, it was applying the "preexisting waiver analysis, specific to arbitration, but without taking into account prejudice"), *with Deng v. Frequency Elecs., Inc.*, 640 F. Supp. 3d 255, 263 (E.D.N.Y. 2022) (evaluating arbitral waiver in the same way it would "in the context of any other kind of contract"). Despite these differences, post-*Morgan*, district courts in this Circuit

---

[7] *See, e.g.*, *Nat'l Cas. Co. v. Cont'l Ins. Co.*, 121 F.4th 1151, 1154 (7th Cir. 2024) ("*Morgan* reinforces the importance of contract principles in FAA cases and supplies no reason to revisit precedent with a solid basis in contract law."); *Brock v. Flowers Foods, Inc.*, 121 F.4th 753, 760 (10th Cir. 2024) ("[T]he FAA does not authorize federal courts to favor arbitration over litigation; it makes arbitration agreements as enforceable as other contracts, but not more so." (citations and quotation marks omitted)); *Lubin v. Starbucks Corp.*, 122 F.4th 1314, 1320 (11th Cir. 2024) ("Arbitration agreements are no more enforceable than an average contract."); *cf. Doraleh Container Terminal SA v. Republic of Djibouti*, 109 F.4th 608, 617 (D.C. Cir. 2024) (echoing *Morgan*'s instruction that courts must "apply the usual federal procedural rules" when reviewing petitions for enforcement under the FAA).

> focus squarely on the conduct of the party in question to determine
> whether it acted inconsistently with its arbitration right.

*WCW, Inc. v. Atlantis Indus., Inc.*, No. 23-7726, 2024 WL 5038529, at *3 n.2 (2d Cir. Dec. 9, 2024) (summary order); *see also Brown v. Peregrine Enters., Inc.*, No. 22-2959, 2023 WL 8800728, at *3 (2d Cir. Dec. 20, 2023) (summary order) (noting that "the prejudice requirement has since been '[s]tripped' from the waiver inquiry, which now involves asking only whether a party 'knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right'" (quoting *Morgan*, 596 U.S. at 419)); *Billie v. Coverall N. Am. Inc.*, No. 22-718, 2023 WL 2531396, at *3 n.3 (2d Cir. Mar. 15, 2023) (summary order) ("[H]ere we ask whether Coverall's conduct evinced a knowing relinquishment of its arbitration rights."). Accordingly, we take the opportunity presented here to clarify the applicable standard after *Morgan*.

### D.    The Post-*Morgan* Standard

As noted, this Court has not yet issued a clear statement of the rule to be applied after *Morgan*, and specifically, whether *Morgan* simply excises the prejudice requirement from our old standard while leaving the remainder of the standard intact, or whether it replaces the old standard entirely. *Morgan* does not directly answer this question, but states: "Stripped of its prejudice requirement,

16

the . . . current waiver inquiry would focus on [the moving party's] conduct. Did [the moving party] . . . knowingly relinquish the right to arbitrate by acting inconsistently with that right?" 596 U.S. at 419.

We do not read *Morgan*'s statement about "stripping away" the prejudice requirement as permitting us to simply remove the prejudice requirement from our pre-*Morgan* waiver standard and carry on, applying the remaining two factors in the way we have historically done. That is because the elimination of the prejudice requirement necessarily affects the application of the other two factors. For instance, we have held that even where defendants delayed eight months in seeking arbitration, filed a motion to dismiss, and conducted discovery, waiver could not be found *because* these actions did not prejudice the non-moving party "in any sense that would support a conclusion of waiver by defendants of their contractual right to arbitrate." *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 889 (2d Cir. 1985). In so doing, we evaluated every aspect of the movants' conduct through the lens of prejudice. That is no longer permissible under *Morgan*. But because the concept of prejudice has been inextricably embedded within the remaining pre-*Morgan* factors, it is not as simple as merely erasing the word "prejudice" from our previous test.

17

So we cannot rely on our old test. But we need not invent a new one; *Morgan* has done that work, offering a new test under which the core inquiry is neither the *length* of the delay nor the *amount* of litigation that has occurred. Rather, in rejecting the Eighth Circuit's rule, and the entire line of cases relying on *Carcich*, the Supreme Court suggested that courts may evaluate waiver by focusing on the following question: Did the moving party knowingly relinquish the right to arbitrate by acting inconsistently with that right?[8] In answering that question, we may consider all aspects of the moving party's conduct – *including* those factors that were significant under our pre-*Morgan* test – as long as we do not do so through the lens of prejudice.

### E.    Application of the *Morgan* Standard to the UBS Defendants

Applying *Morgan*, we conclude that the UBS Defendants acted inconsistently with the right to arbitrate. We focus, as the Supreme Court has approved, on the conduct of the UBS Defendants.

---

[8] Even before *Morgan*, of course, the conduct of the parties was an important consideration when evaluating waiver. *See, e.g.*, *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 132 (2d Cir. 2011) ("[U]nder a variety of circumstances one party may waive or destroy by his conduct his right to insist upon arbitration." (quoting *Baker & Taylor, Inc. v. AlphaCraze.com Corp.*, 602 F.3d 486, 490 (2d Cir. 2010) (per curiam))). It remains so, but now, that conduct need not result in any prejudice to the opposing party to warrant a finding of waiver.

Plaintiffs filed their Complaint on April 11, 2022. UBS Financial Services was served on April 27, 2022; Jay Blair was served on May 3, 2022. On July 1, 2022, John Blair filed a motion to dismiss contending that the District Court should abstain under *Colorado River* and that the Complaint failed to state a claim. On July 29, 2022, after seeking and receiving an extension of time, the UBS Defendants filed a submission using the electronic filing event for a "response" to John Blair's motion to dismiss, stating that they joined John Blair's motion to dismiss or stay the action. Regardless of the label or characterization of the UBS Defendants' submission, that submission was, in effect, a substantive motion to dismiss all claims against the UBS Defendants. The UBS Defendants expressly asked the District Court "to dismiss this action under the *Colorado River* abstention doctrine" and set forth substantive arguments to support that position.[9] UBS Defendants' Mot. to Dismiss at 5, *Doyle*, No. 1:22CV00276(FPG), ECF No. 25. The UBS Defendants' submission did not mention arbitration.

---

[9] In their submission, the UBS Defendants also "reserve[d] all rights and defenses," asserting that certain claims, "in addition to being baseless," were also "now moot," and "vehemently deny[ing] that they breached any alleged fiduciary duties." UBS Defendants' Mot. to Dismiss at 4 n.3, 5 n.5, *Doyle*, No. 1:22CV00276(FPG), ECF No. 25. In contrast to these merits arguments, the UBS Defendants did not in their motion flag or expressly "reserve" their right to invoke the arbitration agreement.

The District Court denied the motion to dismiss as to all defendants on January 26, 2023. At no point before that denial did the UBS Defendants file a motion to compel arbitration or otherwise alert the District Court – or Plaintiffs – that they planned to seek such relief.

On February 10, 2023, the parties stipulated to a further extension of time for the UBS Defendants to respond to the Complaint; again, the stipulation did not mention that the UBS Defendants needed additional time to move to compel arbitration. On March 10, 2023, rather than file an Answer, the UBS Defendants filed a motion to compel arbitration. That motion was the first time the UBS Defendants had mentioned arbitration in any filing to the District Court. On February 23, 2024, the District Court denied the motion to compel arbitration, finding that Plaintiffs had presented sufficient evidence to place the validity of the arbitration agreement at issue for trial.

We conclude that, under *Morgan*, the conduct of the UBS Defendants is inconsistent with the right to arbitrate. The UBS Defendants moved to dismiss all claims against them – without any mention of the possible availability of arbitration. By doing so, they intentionally availed themselves of the District Court's authority and sought affirmative, dispositive relief in the District Court.

The UBS Defendants sought to proceed in another venue – arbitration – *only after their motion to dismiss was denied*. It makes no difference that the UBS Defendants characterized their filing as a "response" and claimed only to "join" John Blair's motion to dismiss; by seeking dismissal in the District Court, the UBS Defendants availed themselves of the District Court's authority to resolve the claims against them.

This conduct is inconsistent with the right to arbitrate. Arbitration is not a fallback position. It is not a second bite at the apple. Rather, a party with a claim to arbitration faces a binary choice: litigation or arbitration. One "cannot have it both ways." *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 712 F.2d 270, 273 (7th Circ. 1983) ("It acquiesced in Sealy's choice of litigation; now it must live with the consequences of that acquiescence."); *see also PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 109 (2d Cir. 1997) (observing that "PPG evidenced a preference for litigation that supports a finding of waiver" by, among other things, "filing substantive motions," and concluding that "PPG acted inconsistently with its contractual right to arbitration"); *Leadertex, Inc.*, 67 F.3d at 26 (observing that a party's "conduct has been largely inconsistent with its present assertion of its right to compel arbitration" when that party "could have

21

invoked the arbitration clause at the outset of the litigation . . . but it chose not to"); *Kramer v. Hammond*, 943 F.2d 176, 180 (2d Cir. 1991) ("Kramer's actions suggest a disingenuousness that the presumption in favor of arbitration was not intended to protect. He invoked the arbitration clause only after raising a number of substantive issues. . . . Only when Kramer had exhausted his pretrial maneuvers did he finally abandon the litigation playing field and retreat to his contractual right to arbitration.").

The UBS Defendants' decision to *first* seek full and final resolution of the claims against them in federal court is inconsistent with the right to arbitrate those same claims. *See Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984) ("Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate.").

That the main focus of the UBS Defendants' motion to dismiss was *Colorado River* abstention renders the UBS Defendants' decision to file a motion to dismiss particularly inconsistent with the right to arbitrate. "Under the *Colorado River* exception the court may abstain in order to conserve federal judicial resources only in exceptional circumstances, where the resolution of existing

concurrent state-court litigation could result in comprehensive disposition of litigation." *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (citation and quotation marks omitted). If a motion to abstain under *Colorado River* is granted, no further action may be taken by the federal court; it may not grant an order compelling arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) ("[T]he decision to invoke *Colorado River* necessarily contemplates that the federal court *will have nothing further to do in resolving any substantive part of the case*, whether it stays or dismisses." (emphasis added)). The whole point of a *Colorado River* motion is to remove the case from the jurisdiction of the federal courts. If the UBS Defendants had succeeded in their *Colorado River* motion, they could not then have asked the District Court to compel arbitration.[10] Thus, the filing of their motion to dismiss is inconsistent with the right to arbitrate.[11]

---

[10] Likewise, of course, a party's moving to dismiss a complaint on the basis of failure to state a claim would preclude any motion to compel arbitration.

[11] We conclude that the UBS Defendants waived the right to seek arbitration by seeking dismissal of the claims against them in the District Court. But that is not to say that a motion to dismiss is *necessary* to a finding of waiver under *Morgan*; it is simply one way that a party can act inconsistently with the right to arbitrate. It is, in this case, sufficient for a finding of waiver, and we therefore need not consider whether any of the UBS Defendants' other actions would also support waiver.

Finally, we observe that although the District Court did not address the issue of waiver, denying the motion to compel arbitration on other grounds, the issue was squarely presented below. Specifically, Plaintiffs argued that "there is ample evidence that [the UBS Defendants] intended to litigate the instant suit in" the District Court, rather than arbitrating, and contended:

> [W]hile arguing that this litigation should be stayed under *Colorado River*, UBS and Jay Blair expressly failed to state that it should be stayed for another reason: that UBS would be seeking to compel arbitration. It is only now, having lost their motion to dismiss and facing the prospect of answering discovery and defending the claims in federal court, that UBS and Jay Blair suddenly claim they are entitled to compel arbitration against Plaintiffs. It is too late for them to take that position.

*Doyle*, 1:22CV00276(FPG), ECF No. 44 at 23 (citation and footnote omitted). We agree. And we conclude that, following *Morgan*'s instruction to focus on the moving party's litigation "conduct" prior to the filing of the motion to compel arbitration, 596 U.S. at 419, the UBS Defendants knowingly relinquished their right to arbitrate in this case by acting inconsistently with that right.

## IV. **CONCLUSION**

In sum, we hold that following *Morgan*, a party "knowingly relinquish[es] the right to arbitrate by acting inconsistently with that right," *id.*, including by first affirmatively seeking a resolution of its dispute in the district court. Here,

24

the UBS Defendants acted inconsistently with their right to arbitration by first filing a motion to dismiss.

Accordingly, the District Court's denial of the UBS Defendants' motion to compel arbitration is **AFFIRMED**.